## COMMONWEALTH *vs.* SCOTT FERGUSON.

No. 90-P-255.

Middlesex. February 7, 1991. - May 14, 1991.

Present: BROWN, PERRETTA, & GREENBERG, JJ

*Assault and Battery by Means of a Dangerous Weapon. Intent. Practice, Criminal*, Instructions to jury, Sentence.

At the trial of a complaint charging assault and battery by means of a dangerous weapon, a shod foot, the judge's refusal to give a requested charge as to the defense of accident, to which the defendant was entitled, combined with the judge's failure clearly to instruct the jury that the Commonwealth had the burden of proving that the defendant's conduct was intentional, required reversal of the convictions. [583-586]

Nothing in the record of a criminal trial indicated that any improper considerations entered into the sentencing of the defendant on a charge of receiving a stolen motor vehicle. [586-587]

COMPLAINT received and sworn to in the Lowell Division of the District Court Department on March 31, 1989.

In the jury session of that division, the case was tried before *Maurice Schwartz*, J.

*Benjamin H. Keehn*, Committee for Public Counsel Services, for the defendant.

*Richard I. Gordon*, Special Assistant District Attorney (*Patricia M. Darrigo*, Assistant District Attorney, with him) for the Commonwealth.

GREENBERG, J. A six-person jury in the District Court found the defendant, Scott Ferguson, guilty of two counts of assault and battery by means of a dangerous weapon (shod foot) and of knowingly receiving a stolen motor vehicle. We conclude that there was error in the judge's refusal to charge the jury on the accident defense and in his definition of the crime of assault and battery by means of a dangerous weapon. Accordingly, the defendant's assault and battery

convictions must be reversed. We affirm the conviction of knowingly receiving a stolen motor vehicle. We recite the pertinent facts.

The "Acre" section of Lowell, located between Salem and Merrimack Streets, contains a large housing project with a long chain link fence marking its rear perimeter. In front of the main buildings is an open parking lot adjacent to Salem Street. On the evening of March 30, 1989, while two Lowell vice squad and narcotics officers, Lieutenant Edward Davis and Officer Anthony DeMoura, were patrolling the area in an unmarked cruiser, they observed the defendant driving a black pickup truck with Maine license plates enter the lot. When Davis pulled his cruiser close by, the defendant "bolted" towards the fence at the rear of the project. The officers, in plain clothes, gave chase, shouting, "[S]top, police." As Davis skirted past the truck, he noticed a "popped" ignition with a screwdriver still protruding from the mechanism.

After racing through the lot and vaulting up the six-foot chain link fence, the defendant found himself with one of his legs in the grasp of Officer DeMoura and precariously dangling from the top of the fence. A struggle with the two pursuing officers ensued and resulted in the defendant being flipped partially over the fence, head first, with his legs still hooked over, securely held by the officers. The gymnastics continued such that the defendant was positioned "literally backwards over the fence" with his "shod" feet flailing upward towards Lieutenant Davis.

DeMoura called for assistance. Two other Lowell police officers, Kelly Richardson and Francis Harvey, responded within minutes and set themselves on the far side of the fence. Richardson attempted to cuff the defendant's outstretched hands, but he was only partially successful, as the defendant "reach[ed] out" for Richardson and punched at him. Davis joined Richardson and Harvey on the other side of the fence, leaving DeMoura alone holding the defendant's legs and deterring his fall. Officer Richardson's strategy, as evidenced by his testimony, was that "if he hit the ground, I

would be able to control him better." He signalled DeMoura to release the defendant's legs, causing him to plummet head first on to a cinder block at the base of the fence.

Undaunted, the defendant continued the fracas with Richardson, who used his service baton in a struggle with the defendant to "get . . . [the defendant's] hands under control" for a final cuffing. It was, Officer Richardson testified, "mass confusion."

The defendant, now under arrest and accompanied by DeMoura and another back-up officer, was transported by ambulance to Saint Joseph's Hospital emergency ward. There is some confusion in the record whether the defendant refused medical treatment or whether he initially refused treatment but then accepted it. In any event, that same evening he was returned to the Lowell police station for booking. Upon being released on bail, the defendant returned to his mother's home in the early morning of March 31, 1989. She testified at trial that when the defendant came home "he was a mess. He was filthy; he had blood all over him. . . . I did attempt in some way to clean him up but every time I went near him, his face and his head was in such a mess that I couldn't touch him. . . ."

In the course of the charge conference with the judge, defense counsel requested that the judge instruct the jury on the defense of accident. Quoting from Justice Holmes in *Brown* v. *United States*, 256 U.S. 335, 343 (1921), that in some instances "[d]etached reflection cannot be demanded in the presence of an uplifted knife," counsel urged a more relaxed version of the standard self-defense instruction and requested an accident defense instruction as to the complaints for assault and battery by means of a dangerous weapon.[1]

---

[1] See Model Jury Instructions for Use in the District Court, Instruction 6:09 (1988 ed. with Supp. 1989), which states in pertinent part that an "accident is defined as an unexpected happening that occurs without intention or design on the defendant's part. It means a sudden unexpected event that takes place without the defendant's intending it." This definition is drawn from *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 83-84 (1984).

The judge declined, and a defense objection was recorded before and after the judge's charge.

We quote from the transcript of counsel's charge conference with the judge. "[L]ooking at that diagram, Judge, the man is draped backwards over a fence. . . . A[t] the time he is supposed to be kicking people. I would suggest that . . . and this heavy odor of alcohol in the medical record, I just suggest that . . . the physical contortion involved there lends itself to an inference of accident, that the kicking that was alleged could have easily been an accident in an effort to right himself."[2] We conclude that the judge's refusal to give the requested instruction was reversible error.

Where the evidence raises the possibility of accident, the defendant is, as matter of due process, entitled upon request to a jury instruction that the Commonwealth has the burden of proving beyond a reasonable doubt that the act was not accidental. *Lannon* v. *Commonwealth*, 379 Mass. 786, 790 (1980). *Commonwealth* v. *Zezima*, 387 Mass. 748, 756 (1982). *Commonwealth* v. *Palmariello*, 392 Mass. 126, 145 (1984). It is clear that this issue may be raised even through the Commonwealth's case-in-chief. *Commonwealth* v. *Lowe*, 15 Mass. App. Ct. 262, 264-265 (1983). At the very least, in describing the defendant's futile attempt to scale the fence, there was police testimony supporting the conclusion that striking DeMoura with his feet, clad as they were in heavy boots, was accidental. See *Commonwealth* v. *Hakala*, 22 Mass. App. Ct. 921, 923 (1986). Contrast *Commonwealth* v. *Palmariello*, 392 Mass. at 145. See also *Commonwealth* v. *Robinson*, 382 Mass. 189, 200 (1981). The judge's refusal to charge on "accident" in terms similar to the District Court model instruction (see note 1, *supra*) was error.

Normally, a judge's failure to give an instruction on the defense of accident is cured by a proper instruction defining the elements of assault and battery by means of a dangerous weapon. G. L. c. 265, § 15A. Here, however, in giving that instruction, the judge confined himself to the following quote:

---

[2]There was no evidence that the defendant's resistance and kicking caused any injury to either Officer DeMoura or Richardson.

"Now assault is putting someone in fear, and a battery is the unwarranted touching of a person. In order to find this defendant guilty you have to find first of all that he committed such an assault and battery."[3]

In his defense, the defendant offered photographs, X-rays and medical records of his head and facial injuries, which defense counsel, in his closing argument to the jury, suggested were inconsistent with intentional conduct in resisting arrest. Further, he argued (on a fragile evidentiary foundation since the defendant did not testify) that Officer Richardson "was using his flashlight and his boot to kick and hit this man [the defendant] many, many times." While the judge properly instructed the jury that the defendant had a right to defend himself if "the police . . . [were] using such a degree of force that it . . . [was] unreasonable in the circumstances," *Commonwealth* v. *Martin*, 369 Mass. 640, 651-652 (1976); *Commonwealth* v. *Moreira*, 388 Mass. 596, 601-602 (1983); *Commonwealth* v. *Francis*, 24 Mass. App. Ct. 576, 579 (1987), he went on to state "you could still find the defendant guilty of assault and battery if you feel that an *unwarranted* touching was made." By failing to instruct the jury that the Commonwealth had the burden of proving that the defendant's conduct was intentional, in the sense that it did not happen accidentally, the judge compounded the prejudice. See *Commonwealth* v. *McCan*, 277 Mass. 199, 203 (1931) ("An assault and battery is the *intentional* and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another" [emphasis supplied]); *Commonwealth* v. *Campbell*, 352 Mass. 387, 397

---

[3]In a short preliminary instruction to the jury at the beginning of the trial, the judge confined the definition to "the unwarranted touching of a person. It can be any type of touching that is not warranted and I like to use as an example perhaps . . . any violent blow of a person . . . ." The defendant argues for the first time that this instruction to the jury was infirm. We view the initial and final charge as a whole to determine whether the omission created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Salcedo*, 405 Mass. 346, 349 (1989).

(1967); *Commonwealth* v. *Maloney*, 23 Mass. App. Ct. 1016, 1016-1017 (1987). Should the point arise on a new trial, the defendant is entitled to have the jury consider his intent in the context of the circumstances of his apprehension by the officers. See generally *Morissette* v. *United States*, 342 U.S. 246, 250 (1952). We agree with the defendant's argument that, although the term "unwarranted" minimally satisfies the requirement that the touching be unjustified, it is too vague to substitute adequately for the requirement that the touching be intentional.[4] But, under the instructions given, the jury were not told to determine whether the defendant was offensively kicking the officers or reflexively reacting to excess force that, the defendant argues, caused his injuries. Taken together with the error in the refusal of the accident instruction, the instructions on assault and battery by means of a dangerous weapon created a substantial risk of a miscarriage of justice.

Lastly, the defendant complains of the sentence on the conviction of receiving a stolen motor vehicle. G. L. c. 266, § 28. Emphasizing the judge's comments at the sentencing hearing,[5] the defendant argues that he is entitled to be resentenced on the receiving a stolen motor vehicle charge because the judge "could have been influenced" by the jury convictions on the assault and battery charges. There is no merit to this argument.

---

[4] The instruction cannot be saved on the ground that the conviction may have been based on a theory of reckless assault and battery. See *Commonwealth* v. *Burno*, 396 Mass. 622, 625 (1986) ("[t]he intentional commission of a wanton or reckless act [something more than gross negligence] causing physical or bodily injury to another"). Compare *Commonwealth* v. *Welch*, 16 Mass. App. Ct. 271, 273-277 (1983) ("The law recognizes . . . an alternative form of assault and battery in which proof of a wilful, wanton and reckless act which results in personal injury to another substitutes for . . . intentional conduct"). No such instruction was requested by the Commonwealth, and, as noted, the officers sustained no injuries.

[5] "Well, it is a long record . . . . I don't see any violence, I do find several failures to stop . . . . [H]e's got to understand that he's got to live with certain rules . . . . [T]o give him no time is just a message that I can't send out."

The judge, after expressing concern over the defendant's recurrent violations of motor vehicle statutes and rejecting the Commonwealth's recommendation for concurrent one-year house of correction sentences on all three convictions, opted to impose concurrent one-year sentences as to all three convictions, thirty days to be served and the balance suspended with a two-year probation.[6]

In fashioning a disposition after conviction, a judge has discretion to consider a variety of factors and has wide latitude within the boundaries of the applicable penal statutes. The judge may take into account hearsay information regarding the defendant's behavior, family life, employment, and various other factors. See *Commonwealth* v. *Celeste*, 358 Mass. 307, 310 (1970); *Williams* v. *New York*, 337 U.S. 241, 245 (1949) (sentencing judge may consider any factors that draw light on the defendant's "life, health, habits, conduct, and mental and moral propensities"); *United States* v. *Tucker*, 404 U.S. 443, 446 (1972) (scope of sentencing and the judge's inquiry is "largely unlimited as to the kind of information he may consider, or the source from which it may come").

Nothing in the record before us indicates that any impermissible considerations entered into sentencing the defendant. Compare *Commonwealth* v. *Repoza*, 28 Mass. App. Ct. 321, 330 (1990). The judge's comments were meant to tell the defendant that he had reached the end of the straight probation line. There were no references, as the defendant argues, to the assault and battery by means of a dangerous weapon convictions. This case is unlike those extreme situations where the judge presumed a defendant's guilt and imposed a penalty for an untried criminal offense, *Commonwealth* v. *Souza*, 390 Mass. 813, 817 (1984), or commented on the defendant's perjury during sentencing, *Common-*

---

[6]In accordance with G. L. c. 279, §§ 1, 1A, the prosecutor asked for a "split" of the one-year sentence, six months to be served and the balance suspended with probation for two years. The judge could have punished the defendant on the conviction of receiving a stolen motor vehicle charge with up to two and one-half years in a house of correction, a fine of up to $15,000, or both. G. L. c. 266, § 28(*a*)

*wealth* v. *Coleman,* 390 Mass. 797, 809 (1984). *Commonwealth* v. *Gresek,* 390 Mass. 823, 829-832 (1984). The judge was entitled to consider that, from 1982 to 1986, the defendant had been convicted of no less than six separate offenses but had as yet avoided incarceration. We will not disturb the judge's sentence on the conviction of receiving a stolen motor vehicle complaint. See *Commonwealth* v. *Franks,* 365 Mass. 74, 81 (1974) ("it is not a function of . . . [an appellate] court to review an otherwise lawful sentence which is within the limits of the applicable statutory provisions").[7]

For the reasons stated above, the judgments on the two counts of the complaint for assault and battery by means of a dangerous weapon are reversed, and the verdicts are set aside. The judgment on the count of the complaint for receiving a stolen motor vehicle is affirmed.

*So ordered.*

---

[7]Because of our decision on the charges involving assault and battery by means of a dangerous weapon, we do not need to address the defendant's argument regarding the judge's failure to instruct the jury regarding the absence at trial of Officer Harvey. We do not anticipate that this issue will arise at any new trial. See *Commonwealth* v. *Franklin,* 366 Mass. 284, 293 (1974); *Commonwealth* v. *Niziolek,* 380 Mass. 513 (1980); *Commonwealth* v. *Vasquez,* 27 Mass. App. Ct. 655 (1989).