COMMONWEALTH *vs.* PETER McGUANE
(and a companion case[1]).

No. 09-P-128.

Middlesex. May 7, 2010. - August 13, 2010.

Present: DUFFLY, MILLS, & GRAHAM, JJ.

*Practice, Criminal,* Instructions to jury. *Evidence,* Accident, Self-defense, Prior misconduct, Relevancy and materiality. *Defense of Others. Self-Defense.*

At the trial of indictments charging the defendants with involuntary manslaughter, the judge did not err in declining to give the defendants' requested instruction to the jury on the affirmative defense of accident, where, assuming that the requested language was a correct recitation of the law, the instruction that the judge gave adequately informed the jury that they could convict the defendants only if the jury found that the defendants had engaged in intentional conduct that caused the victim's death, and specifically noted that the Commonwealth bore the burden of proving beyond a reasonable doubt that the victim's death was not accidental. [374-376] MILLS, J., dissenting.

At the trial of indictments charging the defendants with involuntary manslaughter, the judge did not err in declining to give the defendants' requested instruction to the jury on defense of another, where the instruction that the judge gave adequately instructed the jury that the Commonwealth had the burden of proving that the killing of the victim was not done in self-defense or in defense of another. [376-377]

At the trial of indictments charging the defendants with involuntary manslaughter, the judge did not abuse her discretion in admitting in evidence the defendants' misconduct directed toward the victim several years earlier, where the evidence was relevant to explain what happened later, was reasonably intertwined with the description of the events, and presented a full picture of the events surrounding the killing; and where any potential prejudice to one of the defendants was mitigated by forceful limiting instructions in the judge's final charge to the jury. [377-378]

INDICTMENTS found and returned in the Superior Court Department on September 8, 2005.

The cases were tried before *Diane M. Kottmyer,* J.

[1]Against Daniel McGuane.

*Carlo A. Obligato*, Committee for Public Counsel Services, for Peter McGuane.

*Robert A. O'Meara* for Daniel McGuane.

*Anne C. Pogue*, Assistant District Attorney, for the Commonwealth.

GRAHAM, J. A jury convicted the defendants, Peter McGuane and Daniel McGuane, of involuntary manslaughter of the victim, Kelly Proctor, on theories of both wanton or reckless conduct and battery. On appeal, the defendants argue that the judge erred in failing to instruct the jury as they requested on the defense of accident. In addition, Daniel contends that the judge erred in failing to provide the jury with an instruction on defense of others, and improperly admitted in evidence a prior bad act committed by Daniel against the victim several years prior to the killing. We affirm.

*Facts.* The jury could have found the following facts. The victim and the defendants, twin brothers two years older than the victim, did not have a good relationship. The parties grew up in the town of Ayer. At some point between 1998 and 2000, when the victim was in middle school, Daniel grabbed the handle bars of a bicycle the victim was riding, and slapped him in the face. After that, there were instances when the victim and the defendants "trash talked" to each other, and the defendants called the victim a "bitch." At the time of the incident that led to his death, the victim was five feet, eight inches tall and weighed approximately 155 pounds.[2] Each defendant was approximately six feet, four inches tall and weighed nearly 200 pounds.

On the evening of Saturday, July 2, 2005, the victim and his girlfriend, Jayme Rotondi, watched part of the town of Ayer's annual Independence Day fireworks at Pirone Park, but left early to avoid the crowds at the end of the display. As they left the park, the victim and Rotondi passed a group of at least six people walking toward the park. The group consisted of the defendants; Greg Shultz, an exchange student from Denmark, who was approximately the same size as the defendants; Brandi Livingston; Mary Papalucas; and Sara Jones. Rotondi noticed

[2] The victim, a star athlete in high school, had completed his first year at Nichols College, and had come home to work and spend the summer with his family. He also played semiprofessional football.

one of the defendants staring at her; she smiled, then heard someone laugh. The victim stopped and asked Rotondi, "What are they laughing at?" Peter left the group, walked back toward the victim, and asked, "Did you say something? Do you want me to beat your ass in front of your girl?" Papalucas positioned herself between Peter and the victim and said to Peter, "Don't do this, let's go." At that point, Peter reached over Papalucas's head and, with an open hand, slapped the victim across the face, knocking from his mouth a straw on which he had been chewing. After Peter slapped the victim, Daniel joined in the attack. Both defendants punched the victim several times. The victim began crawling, trying to escape the assault.

The fight gradually moved from the street to the curb, then onto the sidewalk, where the defendants forced the victim back up against a sport utility vehicle (SUV). Rotondi, in an attempt to break up the fight, jumped onto Daniel's back and scratched him, tearing his blue polo shirt. She was pulled off Daniel by Papalucas, who also tried unsuccessfully to break up the fight. One of the defendants shoved Papalucas and Rotondi aside, then Daniel kicked the victim in the chest. The victim fell to the ground and ended up under the SUV. The defendants walked away, leaving the victim under the SUV. As he left the scene, Peter said, "What do you have to say now?"

The victim remained under the SUV, lying on his chest, with blood coming from his nose. His breathing was labored. Papalucas told the victim it was okay to come out from under the SUV, but he was not responsive. She and some of the defendants' friends, who remained at the scene, pulled the victim from under the SUV. The victim was unconscious and his eyes were open but rolled back in his head. Rotondi called 911.

When Ayer police Officer Terrance McSweeney arrived, the victim was lying on the ground unconscious and not breathing. His facial hair was covered with blood, sand and grit from the road. There was also some blood on his head and face. McSweeney radioed for help and began cardiopulmonary resuscitation attempts. Emergency medical technician Jeffrey Swenson arrived and intubated the victim. The victim's heart stopped, and three attempts by Swenson to revive him failed. The victim

was pronounced dead shortly after arrival at Nashoba Deaconess Hospital.

Shortly after the killing, Dr. William Zane, a forensic pathologist and medical examiner, conducted an autopsy on the victim. In his autopsy report, Dr. Zane noted that the victim had a bruise on the back of his head, bruises to his ribs and back, scrapes and bruises to his face, and a swelling and flattening of his brain surface. He concluded that the cause of death was blunt trauma to the head.

In January, 2007, Dr. Elizabeth Bundock, a neuropathologist and medical examiner, re-examined the victim's brain. Unlike Dr. Zane, she found there was no swelling or flattening of the brain surface, but confirmed that the cause of the victim's death was blunt trauma to the head.[3]

*Discussion. 1. Accident instruction.* The defendants claim that the trial judge committed reversible error in failing to instruct the jury on the affirmative defense of accident as they requested at trial. The contention of the defendants at trial was that the Commonwealth's theory as to the cause of death was wholly speculative, and that the Commonwealth had failed to prove that the victim's death was causally related to the skirmish. His death, they argued, was an accident which Peter described in a recorded statement at the Ayer police department. In the statement played to the jury, Peter claimed that neither defendant punched or kicked the victim. He said:

> "And we're all just in a little scuffle over by — between two cars. And then I noticed the girl [the victim] was with, jumped on top of my brother to get him — like a piggy back thing, and just started punching him and scratching him, and then we all just fell like dominoes. Just all — just fell on the curb . . . . And then what happened was, when we all fell, I kind of like sprung up to get away

---

[3]The defendants were initially charged with murder. Each filed a *McCarthy* motion to dismiss the murder indictment. See *Commonwealth* v. *McCarthy*, 385 Mass. 160 (1982). The Commonwealth opposed the motions to dismiss, based on Dr. Zane's initial report, in which he found, erroneously, brain swelling and flattening of the brain surface. In May, 2007, after Dr. Bundock's re-examination of the victim's brain and conclusion that there was no brain swelling, the Commonwealth entered a nolle prosequi of the murder indictments.

from everything and I went towards the fence. I started walking away, like backwards to see if anything was going to happen and my brother did the same thing, just backwards; just walking. And we saw him, I don't know if he tripped or if he fell, but he went under a car. He scooted under and I heard him saying, 'I'm fine, just leave me alone,' 'cause I heard his girlfriend talking to him and asking him questions and stuff. When I heard him say he was fine, I walked away."[4]

"Accident, like provocation, self-defense, and defense of others, is treated as if it is an affirmative defense, which, when it negates an essential element of a crime . . . must be disproved beyond a reasonable doubt." *Commonwealth* v. *Podkowka*, 445 Mass. 692, 699 (2006). Therefore, "[w]hen the issue of accident is 'fairly raised,' the judge, at least on request, must instruct the jury that the Commonwealth must disprove accident beyond a reasonable doubt." *Ibid.* Moreover, we examine the evidence in the light most favorable to the defendant. See *Commonwealth* v. *Power-Koch*, 69 Mass. App. Ct. 735, 737 (2007).

The defendants requested that the judge instruct the jury on the affirmative defense of accident as follows:

> "In this case there is evidence that what occurred was an accident. You must therefore determine whether . . . what occurred was an accident. An accident is defined as an unexpected happening that occurs without intention or design on the defendant's part. It means a sudden, unexpected event that takes place without the defendant's intending it. . . . Accident is also defined as 'an unintended happening that results in injury or loss. It is some sudden and unexpected event that takes place.' . . . If an act is accidental, it is not a crime. . . . When considering the evidence, bear in mind that the defendant does not have to

---

[4]At trial, the defendants' sole witness was Brandi Livingston, Peter's companion the night of the incident. Livingston gave an account of the incident similar to the one given by Peter. She testified, "There was like wrestling going on. . . . Peter and Dan left. We were leaving. . . . I don't know how to explain it, but it looked to me like [the victim] dove under the car that was parked. . . . I asked him if he was all right. His response was 'I'm all right. . . . I'll be okay. Just leave me alone.' . . . I [later] said his name, and . . . then I could tell he was breathing funny . . . wheezing."

prove anything. The Commonwealth must prove beyond a reasonable doubt that what occurred was not an accident. If the Commonwealth has failed to prove to you beyond a reasonable doubt that what occurred was not an accident, then you must find the defendant not guilty."

The defendants argue, without supporting citations, that the judge's instruction on accident was flawed because it did not contain a definition of the term "accident." The judge's instruction, set forth in the margin,[5] was based on the Supreme Judicial Court's Model Jury Instructions on Homicide. The defendants argued to the jury that the Commonwealth failed to prove that the victim's death was causally related to their acts, and suggested that the death was accidental. There was no error.

Assuming, without deciding, that the defendants' requested language was a correct recitation of the law, "[a] judge need not instruct the jury in exact accord with the defendant's request." *Commonwealth* v. *Godin,* 374 Mass. 120, 130 (1977), cert. denied, 436 U.S. 917 (1978). *Commonwealth* v. *Repoza,* 28 Mass. App. Ct. 321, 328 (1990). The judge's instruction adequately informed the jury that they could convict the defendants only if they found that the defendants had engaged in intentional conduct that caused the victim's death, specifically noting that the Commonwealth bore the burden of proving beyond a reasonable doubt that the victim's death was not accidental.

2. *Defense of another.* We also reject Daniel's claim that the judge erred in refusing to instruct the jury on defense of another in the language that he specifically requested.[6] The judge

---

[5]The judge gave the jury the following instruction:

> "The Commonwealth must prove that the conduct of one or both of the defendants caused the death, and that the conduct was intentional, not the result of accident, mistake or negligence. . . . The Commonwealth would have the burden . . . to prove that the death was not accidental, that the conduct causing the death was not accidental. . . .
>
> "So the Commonwealth has the burden of proving intentional conduct that caused death. The Commonwealth does not have to prove that a death was intended, but it must prove that the conduct caused death, and that the conduct of the defendant or a joint venturer was intentional."

[6]Daniel requested the following jury instruction:

> "A person may lawfully use force to defend another person when a

adequately instructed the jury that it was the Commonwealth's burden to prove that the killing of the victim was not done in self-defense or in defense of another.[7] See *Commonwealth* v. *Williams*, 450 Mass. 879, 883-885 (2008).

3. *Prior bad act.* Daniel argues that the judge erred by admitting evidence that, when they were in middle school, Daniel grabbed the handlebars of the victim's bicycle and slapped him in the face. The incident occurred approximately six to eight years prior to the killing, and Daniel contends that the evidence was too remote in time, speculative, and prejudicial to be admissible.

"It is well established that the prosecution may not introduce evidence of the defendant's prior misconduct for the purpose of showing that he has a bad character or the propensity to commit the crime charged. See Mass. G. Evid. § 404(a) (2010). This evidence may be admissible if it is relevant for some other purpose. See *Commonwealth* v. *Helfant*, 398 Mass. 214, 224-225 (1986), and cases cited; Mass. G. Evid. at § 404(b). Where the evidence is only marginally relevant, it should be excluded unless the probative value of the evidence outweighs the undue prejudice 'that may flow from it.' *Commonwealth* v. *Helfant*,

reasonable person in the actor's position would believe intervention was necessary for the protection of the other person under the circumstances. The reasonableness of the belief may depend in part on the relationships among the persons involved. A person may not use excessive force when intervening on behalf of another person. The use of force in defending another person may not be punitive or retaliatory."

[7] The judge instructed the jury as follows:

"The Commonwealth must prove beyond a reasonable doubt that the killing was unlawful, that is, that it was not done in self-defense, defense of another, or for another justifiable reason. One is entitled to use force to defend himself or another person in the following circumstances.

"First, where a person has reasonable grounds to believe that he or another person was in imminent danger or harm; second, where that person uses all reasonable means to avoid physical combat; and third, where the degree of force that is used is reasonable in the circumstances."

The crux of Daniel's argument appears to be that, since he and the codefendant were twin brothers, it was important for the jury to be instructed that "[t]he reasonableness of the belief [that intervention was necessary] may depend in part on the relationships among the persons involved."

*supra* at 225. A judge's decision to admit such evidence is upheld unless there is clear error. *Commonwealth* v. *DelValle*, 443 Mass. 782, 790 (2005)." *Commonwealth* v. *Cruz*, 456 Mass. 741, 751 (2010).

There was no abuse of discretion. Here, the earlier incident between the defendant and the victim was relevant to explain what happened later, and was admissible because it was reasonably intertwined with the description of the events and presented a full picture of the events surrounding the killing. See *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982). Moreover, there was evidence of ongoing animosity between the defendants and the victim — other incidents of verbal jousting between them, including the defendants calling the victim a "bitch." The middle school incident was particularly relevant in this case, given that the defendants claimed that the victim's death occurred as the result of an accident. See *Commonwealth* v. *Ashman*, 430 Mass. 736, 741-742 (2000).

Finally, any potential prejudice to Daniel caused by the admission of the evidence was mitigated by the limiting instructions contained in the final charge to the jury. The judge in this case, commendably sensitive to the potential for undue prejudice from the introduction of prior misconduct evidence, provided the jury with forceful limiting instructions at the close of the case.[8]

*Judgments affirmed.*

MILLS, J. (dissenting). Because the accident instruction in this case was inadequate, I would reverse the judgments of conviction, and accordingly, I respectfully dissent.

The extent of the judge's instruction on accident was that "[t]he Commonwealth must prove that the conduct . . . was intentional, not the result of accident."[1] While this accurately announced the Commonwealth's burden to disprove accident, it

---

[8]The defendants requested that the judge not provide any limiting instructions to the jury contemporaneously with the evidence, and she complied with that request.

[1]In her instructions, the judge also used the following hypothetical:

"Assume that a person is standing on a subway platform, and a person is running to get a train, and that person runs into the person standing

did not define that term or give the jurors any guidance in understanding its meaning.

The majority suggests that the judge's instruction was based on the Model Jury Instructions for Homicide. Those instructions provide that when instructing on accident, the judge should instruct that "[t]he Commonwealth must prove to you beyond a reasonable doubt that the killing was not the result of (an accident. . . .) [and that the judge] *will instruct you later in more details* concerning the law governing accident." Massachusetts Superior Court Criminal Jury Instructions, § 2.11 (Mass. Continuing Legal Educ. 1999 & Supp. 2003) (emphasis added). Section 3.13 defines accident "as an unexpected happening that occurs without intention or design on the defendant's part. It means a sudden, unexpected event that takes place without the defendant's intending it." *Ibid.*[2] A jury should not be left to its uninstructed imagination in attempting to understand the meaning of the term accident. See *Commonwealth* v. *Ferguson*, 30 Mass. App. Ct. 580, 583 (1991) (reversal for failure to give requested accident instruction).[3]

In our cases, "accident" is used in two different senses. See *Commonwealth* v. *Figueroa*, 56 Mass. App. Ct. 641, 648-650 (2002). Understanding exactly what the defense of accident means is a challenge for both lawyers and judges alike, particularly in the context of a manslaughter charge.[4] Failing to

on the platform and the person falls to his death. The Commonwealth would have the burden in that case to prove that that death was not accidental, that the conduct causing the death was not accidental."

[2]Instruction 9.100 of the Model Jury Instructions for Use in the District Court (Mass. Continuing Legal Educ. 3d ed. 2009) defines accident "as an unexpected happening that occurs without intention or design on the defendant's part. It means a sudden, unexpected event that takes place without the defendant's intending it."

[3]*Ferguson* suggests that an accident instruction contain more than what was included in the judge's instruction here. See *Ferguson, supra* at 582 n.1 (quoting from Instruction 6:09 of the Model Jury Instructions for Use in the District Court [1988 ed. with Supp. 1989], "which states in pertinent part that an 'accident is defined as an unexpected happening that occurs without intention or design on the defendant's part. It means a sudden unexpected event that takes place without the defendant's intending it' ").

[4]To the extent the defendants were charged with involuntary manslaughter, they were not entitled to an accident instruction when that term is used in the

define the term "accident" was improper. Cf. *Commonwealth* v. *Peters*, 429 Mass. 22, 32 (1999) ("instructions were flawed [because] . . . [t]hey gave no definition of the meaning of corroboration"); *Commonwealth* v. *Kessler*, 442 Mass. 770, 777 (2004) (requiring definition of "recklessly"); *Commonwealth* v. *Walter*, 40 Mass. App. Ct. 907, 909 (1996) (judge's failure to define the word "felony" in a prosecution for "breaking and entering in the daytime with intent to commit a felony" was error). Instead, the jury should have been instructed based on guidance from our decision in *Commonwealth* v. *Figueroa*, *supra*, and the model jury instructions.[5] Because the judge did not define the term "accident" for the jury, the instructions were inadequate, and accordingly, I respectfully dissent.

---

first sense because whether they intended the result of their actions is irrelevant for involuntary manslaughter. See *Commonwealth* v. *Figueroa, supra* at 649. However, they were entitled to such an instruction when accident is used in the second sense (the so-called "pure" accident). *Id.* at 650. To the extent the defendants were charged with voluntary manslaughter, both meanings of accident were available as a defense.

[5]Compare *Commonwealth* v. *Azar*, 32 Mass. App. Ct. 290, 308-309 (1992) (rejecting defendant's claim that accident instruction was insufficient when judge stated that "the Government must prove beyond a reasonable doubt that the death didn't result from some kind of accident as opposed to intentional act, and the consequences that a reasonable person would understand to come from the intentional act").