COMMONWEALTH *vs.* ANGEL RIVAS.

Hampden. April 1, 2013. - August 9, 2013.

Present: SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Firearms. Practice, Criminal,* Duplicative convictions, Sentence. *Due Process of Law,* Sentence. *Search and Seizure,* Probable cause. *Probable Cause. Evidence,* Prior misconduct.

Where a criminal defendant had been convicted of and sentenced on two sets of duplicative convictions in the Superior Court, and where a decision as to which convictions to vacate on appeal would have a significant impact on the original sentencing scheme (given that the lesser included offenses carried higher penalties than the greater offenses), this court concluded that the determination as to which conviction to vacate lay within the discretion of the sentencing judge, and remanded the matter to the Superior Court for further proceedings. [187-192]

There was no merit to a criminal defendant's claim that police officers lacked probable cause to stop him and to search his vehicle without a warrant. [192-194]

At the trial of indictments charging firearms offenses, the erroneous admission in evidence of testimony that the police were conducting narcotics surveillance when they observed the offenses in question, although potentially prejudicial in its implication that the defendant was involved with drugs, could not, without more, be said to have likely affected the jury's verdict. [194-195]

INDICTMENTS found and returned in the Superior Court Department on March 2, 2010.

A pretrial motion to suppress was heard by *C. Brian Mc-Donald,* J., and the cases were tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Susan E. Taylor* for the defendant.

*Bethany C. Lynch,* Assistant District Attorney, for the Commonwealth.

DUFFLY, J. We consider in this case whether, when a defendant is convicted of duplicative offenses, the lesser included offense must be vacated, even when it carries a higher penalty

than the greater offense. The defendant was convicted by a Superior Court jury of four charges of possession of firearms and ammunition. The Commonwealth and the defendant agree that two of the four convictions on which sentence was imposed must be vacated because they are duplicative. The defendant, however, argues that the two convictions on lesser included offenses should be vacated, even though they carry higher penalties because of statutory sentencing enhancements applicable to repeat offenders, whereas the Commonwealth contends that the convictions carrying lesser penalties should be vacated. In the alternative, the Commonwealth asks that the case be remanded to the Superior Court for resentencing.

Because two of the sets of convictions and their related sentences are duplicative, constitutional and common-law principles require that two of the convictions and sentences be vacated. Because a determination as to which convictions should be vacated ordinarily rests in the sound discretion of the trial judge, we remand the matter to the Superior Court so that a judge of that court may decide, in the exercise of that discretion, which conviction in each set of paired convictions should be vacated.[1] See *Commonwealth* v. *Letkowski*, 83 Mass. App. Ct. 847, 858-859 (2013); *Commonwealth* v. *Johnson*, 75 Mass. App. Ct. 903, 906 (2009). The defendant also challenges the lawfulness of the vehicle stop during which the firearm was seized, and the introduction at trial of testimony indicating that the police were conducting narcotics surveillance when an officer observed the defendant with a gun. As to these claims, we affirm the denial of the defendant's motions to suppress and for a mistrial.

*Background facts and proceedings.* The jury could have found the following facts. On the evening of December 15, 2009, Springfield police Officer Neil Maloney was conducting surveillance from an unmarked vehicle using binoculars. He saw the defendant approach a Honda station wagon parked on the street. A man approached the defendant, and the two had a conversation during which the defendant removed a silver firearm from his jacket and held it up against his own chest; the barrel was visible. The defendant then got into the Honda with a third man, and the vehicle was driven away. Maloney instructed other

---

[1]The judge who imposed the original sentences in this case has retired.

officers to stop the Honda. Officers stopped the vehicle and searched the defendant and the passenger. Finding nothing on their persons, an officer then searched the passenger compartment of the vehicle and discovered a loaded .22 caliber handgun under the passenger seat; the handgun was later determined to be operative. The magazine inside contained nine bullets but was capable of holding twelve. The weapon thus met the statutory definition of a large capacity firearm. See G. L. c. 140, § 121.

The defendant was indicted for unlawful possession of a firearm, G. L. c. 269, § 10 (a), as a repeat offender, G. L. c. 269, § 10G (c) (count 1); possession of ammunition without a firearm identification card, G. L. c. 269, § 10 (h), as a repeat offender under § 10G (count 2); unlawful possession of a loaded firearm, G. L. c. 269, § 10 (n) (count 3); and unlawful possession of a large capacity weapon, G. L. c. 269, § 10 (m) (count 4).[2] The jury returned verdicts of guilty on all four underlying charges, and a separate proceeding was subsequently conducted

---

[2] In count 1 of the indictment, the defendant was charged with unlawful possession of a firearm, G. L. c. 269, § 10 (a), as a repeat offender with three prior convictions, G. L. c. 269, § 10G (c). Without sentencing enhancement, the indictment would carry a sentence of not less than two and one-half years and not more than five years in State prison.

In count 2, the defendant was charged with possession of ammunition without a firearm identification card, G. L. c. 269, § 10 (h), as a repeat offender. Conviction of this underlying offense ordinarily carries a sentence of not more than two years in a jail or house of correction and a fine of not more than $500.

By agreement with the Commonwealth, the defendant pleaded guilty to counts 1 and 2 as a repeat offender with two prior convictions, bringing him under the provisions of § 10G (b). As relevant here, the defendant was subject as a repeat offender to an enhanced sentence of not less than ten years and not more than fifteen years in State prison on count 1 and to an enhanced sentence of not less than ten years and not more than fifteen years in State prison on count 2.

Count 3 charged unlawful possession of a loaded firearm under G. L. c. 269, § 10 (n), which provides: "Whoever violates paragraph (a) . . . by means of a loaded firearm . . . shall be further punished by imprisonment in the house of correction for not more than 2 1/2 years, which sentencing shall begin from and after the expiration of the sentence for the violation of paragraph (a)."

Count 4 charged unlawful possession of a large capacity weapon under G. L. c. 269, § 10 (m) ("Notwithstanding the provisions of paragraph [a] or [h], any person not exempted by statute who knowingly has in his possession . . . a large capacity weapon or large capacity feeding device therefor who

on the repeat offender portion of the indictments. In that proceeding, the defendant admitted to having been convicted previously of a violent crime and of narcotics distribution, and was therefore subject to sentencing enhancement pursuant to § 10G on his convictions of unlawful possession of a firearm under G. L. c. 269, § 10 (*a*), and unlawful possession of ammunition without a firearm identification (FID) card under G. L. c. 269, § 10 (*h*).[3]

The judge imposed concurrent, enhanced sentences under § 10G of not less than twelve and not more than fifteen years in State prison on each of the two convictions of unlawful possession of a firearm and of ammunition. Additionally, the judge imposed a concurrent sentence of not less than eight and not more than ten years on the conviction of unlawful possession of a large capacity weapon, G. L. c. 269, § 10 (*m*), and a sentence of one day in a State prison on the defendant's conviction of unlawful possession of a loaded firearm, G. L. c. 269, § 10 (*n*), to run from and after the sentence on his firearm possession conviction. We transferred the defendant's appeal from the Appeals Court to this court on our own motion.

*Discussion.* 1. *Duplicative convictions.* The double jeopardy clause of the Fifth Amendment to the United States Constitution and Massachusetts common law protect defendants against the imposition of multiple punishments for the same offense. *Commonwealth* v. *Vick*, 454 Mass. 418, 431, 433 n.15 (2009). The "double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the double jeopardy clause to define crimes and fix punishments;

---

does not possess a valid Class A or Class B license to carry firearms . . . . shall be punished by imprisonment in a state prison for not less than two and one-half years nor more than ten years").

The sentencing enhancement set forth in § 10G applies solely to violations of G. L. c. 269, § 10 (*a*), (*c*), and (*h*), and is thus applicable only to counts 1 and 2.

[3]General Laws c. 269, § 10G (*b*), provides:

"Whoever, having been previously convicted of two violent crimes, or two serious drug offenses or one violent crime and one serious drug offense, arising from separate incidences, violates the provisions of said paragraph (a), (c) or (h) of said section 10 shall be punished by imprisonment in the state prison for not less than ten years nor more than 15 years."

but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." *Brown* v. *Ohio*, 432 U.S. 161, 165 (1977).[4] See *Commonwealth* v. *Alvarez*, 413 Mass. 224, 231 (1992) (Legislature has "broad power to define crimes" and therefore to impose multiple punishments for the same criminal conduct). The Fifth Amendment prohibits the courts from "prescribing greater punishment than the legislature intended." *Missouri* v. *Hunter*, 459 U.S. 359, 366 (1983). See *Commonwealth* v. *Suero*, 465 Mass. 215, 221 (2013). Where the Legislature has not stated its intent to impose multiple punishments for the same criminal conduct, we utilize the elements test set forth in *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871), to determine whether the Legislature intended to punish the same conduct under multiple statutory offenses.[5] *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981). If such legislative intent cannot be discerned, the convictions are duplicative, and where a defendant has been sentenced on duplicative convictions, one of them must be vacated. See *id.*

In this case, we agree that the defendant's convictions are duplicative. His conviction under count 1, unlawful possession of a firearm, is a lesser included offense of his conviction under count 4, and thus counts 1 and 4 are duplicative.[6] Because the only ammunition found in the defendant's possession was inside

---

[4]Under its "broad discretion . . . to select the charges to be brought in a particular case," the Commonwealth ordinarily may elect to prosecute a defendant simultaneously under several statutes. *Ball* v. *United States*, 470 U.S. 856, 859, 861 (1985). See *Commonwealth* v. *Johnson*, 75 Mass. App. Ct. 903, 906 (2009) ("The Commonwealth retains the authority to make the determination in the first instance of the offense with which a person in the defendant's circumstance should be charged").

[5]To determine whether the Legislature has intended "to further distinct policies," *Commonwealth* v. *Jones*, 441 Mass. 73, 75 (2004), such that a defendant may be convicted and sentenced for two statutory offenses arising from the same conduct, we ask whether "each crime requires proof of an element that the other does not." *Commonwealth* v. *Valliere*, 437 Mass. 366, 371 (2002), citing *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). "If so, neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature" and are therefore not duplicative. *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981).

[6]The elements-based analysis of duplicativeness is not affected by the pres-

the firearm, his conviction under count 2, unlawful possession of ammunition, is a lesser included offense of his conviction under count 3, unlawful possession of a loaded firearm. See *Commonwealth* v. *Johnson*, 461 Mass. 44, 52-54 (2011). See also note 2, *supra*.[7]

When faced on appeal with two convictions that are duplicative of each other, appellate courts have generally considered it "appropriate" to vacate the conviction on the offense with fewer elements and "to affirm the conviction on the more serious offense" without remand to the trial court. *Commonwealth* v. *Bennett*, 424 Mass. 64, 69-70 (1997), citing *Commonwealth* v. *Crocker*, 384 Mass. 353, 358 n.6 (1981). See *Commonwealth* v. *Johnson, supra* at 54; *Commonwealth* v. *Hoilett*, 430 Mass. 369, 376 (1999), quoting *Commonwealth* v. *Mello*, 420 Mass. 375, 398 (1995); *Commonwealth* v. *Costa*, 65 Mass. App. Ct. 227, 235 (2005), quoting *Commonwealth* v. *Valliere*, 437 Mass. 366, 371-372 (2002). In such cases, where an appellate court has vacated the lesser included offense (and its lesser punishment) without remand, the decision has had little effect on the sentencing scheme devised by the trial judge.

Here, the decision as to which convictions to vacate may have a significant impact on the original sentencing scheme. On

ence of a sentencing enhancement, because such enhancements do not add new elements to the Commonwealth's burden of proof. See *Bynum* v. *Commonwealth*, 429 Mass. 705, 709 (1999) ("The prior offense is not an element of the crime for which a defendant is charged but concerns the punishment to be imposed if he is convicted . . . and the prior offense is [subsequently] proved").

[7]The parties properly do not argue that count 1, unlawful possession of a firearm, G. L. c. 269, § 10 (*a*), and count 3, unlawful possession of a loaded firearm, G. L. c. 269, § 10 (*n*), are duplicative of one another. Although, under the traditional elements test of *Morey* v. *Commonwealth, supra* at 434, unlawful possession of a firearm is a lesser included offense of unlawful possession of a loaded firearm, the text of G. L. c. 269, § 10 (*n*), evidences a clear legislative intent to punish violators for the same offense under both statutes:

"Whoever violates paragraph (*a*) . . . by means of a loaded firearm . . . *shall be further punished* by imprisonment in the house of correction for not more than 2 ½ years, *which sentencing shall begin from and after the expiration of the sentence for the violation of paragraph (a)*" (emphasis added).

See *Commonwealth* v. *Johnson*, 461 Mass. 44, 54 n.11 (2011).

the one hand, were we to determine, as the defendant urges, that his convictions of unlawful possession of a firearm and of ammunition must be vacated, the defendant would be relieved of the more severe sentences imposed by the application of the repeat offender sentencing enhancement. In that event, he would face, as his most serious punishment, the eight- to ten-year sentence on his conviction of unlawful possession of a large capacity weapon. On the other hand, were we to adopt the Commonwealth's approach and vacate the defendant's convictions of unlawful possession of a large capacity firearm and of a loaded firearm, we would leave intact the convictions of the "lesser included" offenses of unlawful possession of a firearm and of ammunition, for which the defendant received concurrent sentences of not less than twelve and not more than fifteen years.

In prior decisions, we have not answered directly the question whether a trial judge must, in every instance in which convictions are duplicative, vacate the lesser included offense, or vacate the offense with the less severe penal consequences. Based on the following, we conclude that the decision as to which duplicative conviction to vacate is a discretionary one.

Courts face the question of which duplicative conviction to vacate only where the Commonwealth has not, prior to sentencing, made the decision to enter a nolle prosequi on one of the two duplicative convictions. Although the Commonwealth has significant discretion over what charges to bring and to prosecute, see note 4, *supra*, that discretion ends at sentencing. See Mass. R. Crim. P. 16, 378 Mass. 885 (1979);[8] *Commonwealth* v. *Harris*, 75 Mass. App. Ct. 696, 703 (2009), citing *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 19-20 (1923). Thus, where the Commonwealth has proceeded to sentencing without entering a nolle prosequi on a duplicative conviction, the decision is, at its essence, a sentencing decision, and the determination as to which conviction to vacate lies with the sentencing judge, who must exercise discretion to craft the most "appropriate individualized

---

[8]Under Mass. R. Crim. P. 16, 378 Mass. 885 (1979), "[a] prosecuting attorney may enter a nolle prosequi of pending charges at any time prior to the pronouncement of sentence. . . . After jeopardy attaches, [however,] a nolle prosequi entered without the consent of the defendant shall have the effect of an acquittal of the charges contained in the nolle prosequi."

sentence" within the bounds of the applicable criminal statutes.[9] See *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92 (1993) ("sentence should reflect the judge's careful assessment of several goals: punishment, deterrence, protection of the public, and rehabilitation"); *Commonwealth* v. *Ferguson*, 30 Mass. App. Ct. 580, 586 (1991) (in fashioning sentence, "a judge has discretion to consider a variety of factors and has wide latitude within the boundaries of the applicable penal statutes"). See also *Commonwealth* v. *Johnson*, 75 Mass. App. Ct. 903, 908 (2009) (Brown, J., concurring) ("to the extent that the only defect in unauthorized duplicative convictions lies in the affront they pose to double jeopardy principles, it is immaterial which convictions are dismissed . . . . A court should be free to fashion whatever remedy best serves the ends of justice in any particular case").[10]

In the circumstances of this case, a trial judge could, in order

[9]Because the determination of which convictions to vacate ordinarily belongs to the sentencing judge, when the need to vacate duplicative convictions is raised on appeal, the issue should be remanded unless it is readily apparent that the actions of the appellate court in vacating certain convictions and their sentences will not materially affect the goals of the original sentencing scheme. See, e.g., *Ball* v. *United States, supra* at 864 ("the only remedy consistent with the congressional intent is for the District Court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions").

[10]Federal appellate courts considering similar cases have held that the decision of which duplicative conviction to vacate is one for the sentencing judge. See, e.g., *United States* v. *Maier*, 646 F.3d 1148, 1154 (9th Cir.), cert. denied, 132 S. Ct. 601 (2011) ("The choice of which count to vacate is fundamentally a sentencing decision"); *United States* v. *Peel*, 595 F.3d 763, 768 (7th Cir. 2010), cert. denied, 131 S. Ct. 994 (2011), and cases cited (decision as to which conviction to vacate "is a matter committed to the trial judge's discretion because functionally it is a decision concerning the length of the defendant's sentence"); *United States* v. *Chambers*, 944 F.2d 1253, 1269 (6th Cir. 1991), cert. denied, 502 U.S. 1112 (1992) (where "anomaly" in sentencing guidelines produced a longer sentence on a duplicative lesser included offense than on the greater offense, "we think it is a decision for the trial court" which to vacate). In contrast to proceedings under Massachusetts law, however, under Federal law, the prosecutor's unilateral authority to obtain a dismissal of some counts ends (absent permission of the defendant and the court) at the start of trial. See *United States* v. *Hector*, 577 F.3d 1099, 1101-1103 (9th Cir. 2009) (because defendant did not consent to dismissal of duplicative conviction, judge had discretion following trial to determine which convictions to vacate). Compare Mass. R. Crim. P. 16, see note 8, *supra*, with Fed. R. Crim. P. 48(a) (requiring that prosecutor obtain "leave of court" to dismiss an

to fashion the most appropriate sentence, properly vacate either conviction.[11] We therefore remand the matter for a determination by a Superior Court judge, in the exercise of his or her discretion, which conviction between counts 1 and 4, and which conviction between counts 2 and 3, should be vacated; and to enter sentences on the remaining two convictions in a manner that does not exceed the punishment imposed by the trial judge's original sentencing scheme.

We turn to the defendant's claims concerning asserted errors at trial.

2. *Motion to suppress.* Prior to trial, the defendant moved to suppress the firearm, arguing that police lacked probable cause to stop him and to search his vehicle without a warrant. In reviewing a decision on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002).

Following a hearing on the motion to suppress, the judge found that Maloney and another police officer were conducting undercover narcotics surveillance in Springfield. Each was stationed in an unmarked vehicle. Maloney was familiar with the defendant "as a result of prior drug arrests and convictions" and had participated in arresting the defendant the previous

---

indictment or complaint; "[t]he government may not dismiss the prosecution during trial without the defendant's consent").

[11]We do not decide whether vacating a conviction for an offense that both carries the higher penalty and has more elements would be an abuse of discretion, but we note that the United States Court of Appeals for the Seventh Circuit has suggested that a judge might abuse his discretion by doing so:

> "What is true is that in a case in which the lesser-included offense has fewer elements *and* is the less serious offense, vacating the sentence for the graver offense would be an abuse of discretion: imagine convicting a person of attempted murder and of murder and punishing him only for the attempt. This is not such a case; the lesser-included offense of obstruction of justice is the graver offense." (Emphasis in original.)

*United States* v. *Peel, supra.*

We recognize also that, under the unique principles applicable to the felony-murder rule, the underlying felony is always considered a lesser included offense that will be vacated as duplicative. See, e.g., *Commonwealth* v. *Anderson*, 425 Mass. 685, 692 (1997).

month for drug offenses. He noticed a Honda parked nearby and recognized it as the same vehicle that the defendant had been operating at the time of the prior drug arrest.

Maloney, using binoculars, observed the defendant speaking to an unidentified male by the vehicle. As the two conversed, the defendant removed an object from his coat pocket and held it to his chest. Maloney saw a short silver gun barrel. Because Maloney "was aware of the defendant's drug convictions, he knew that the defendant could not possess a license to carry the firearm." Another unidentified male approached the vehicle and entered it without speaking to the defendant; the defendant got into the driver's seat and drove away. Maloney then apprised other officers of his observations and directed them to stop the vehicle. Following the stop, the occupants of the vehicle were frisked; when no weapons were found, an officer searched the vehicle and located a firearm under the passenger seat.

The defendant argues that the judge's finding that Maloney was aware of the defendant's prior narcotic convictions was clearly erroneous and, therefore, that the officers did not have probable cause to stop him and to search his vehicle. See *Commonwealth* v. *Couture*, 407 Mass. 178, 179, 181, cert. denied, 498 U.S. 951 (1990) (merely glimpsing weapon, without reasonable basis to believe that holder is carrying it illegally, does not provide probable cause to search or arrest for firearms offense). We disagree.

Maloney testified at the hearing that he was familiar with the firearms licensing laws and "was aware because of prior experience that [the defendant] did have narcotic violations and he would not be able to obtain [a] license to carry." The applicable statute prohibits the issuance of a license to carry a firearm if the applicant "has, in any state or federal jurisdiction, been convicted or adjudicated a youthful offender or delinquent child for the commission of . . . a violation of any law regulating the use, possession or sale of controlled substances . . . ." See G. L. c. 140, § 131 (*d*) (i). On the basis of this testimony, the judge could draw the reasonable inference that, at the time of the arrest, Maloney was aware that the defendant had prior drug convictions, even though he referred to them as "violations," because Maloney knew the defendant was ineligible to obtain a

license to carry as a result of such convictions. The motion judge's finding that police had probable cause to stop and search the defendant was therefore not clearly erroneous. Compare *Commonwealth* v. *Couture, supra* at 181 (no probable cause to search where police "had no reason to believe, before conducting the search of the vehicle, that the defendant had no license to carry a firearm").

3. *Prior bad acts.* At the start of trial, the judge[12] allowed the defendant's motion in limine to exclude any evidence or testimony concerning his prior interactions with police. The judge ordered that, pursuant to *Commonwealth* v. *Wilson*, 441 Mass. 390, 399-400 (2004), Maloney could testify only that he was conducting surveillance, and could make no reference to drugs or to his assignment as a part of a Springfield police narcotics unit.

During his testimony, however, Maloney referred to his assignment with the "narcotics bureau" and said he was conducting "street-level narcotics surveillance." Defense counsel did not object; following Maloney's testimony, however, the judge admonished the prosecutor. Nevertheless, in response to the prosecutor's questioning about the nature of his assignment on the night of the arrest, the next officer to testify also said that he was conducting narcotics surveillance.[13] Defense counsel objected to the testimony of the second officer.

Citing *Commonwealth* v. *Baker*, 440 Mass. 519, 530-531 (2003), the defendant argues that this testimony constituted improper, irrelevant, and prejudicial evidence of his prior bad acts. Because the defendant objected to the second officer's testimony and the judge identified the error in the first officer's testimony sua sponte, we must determine if the admission of the testimony was prejudicial, that is, whether its admission "likely affected the jury's verdict." *Commonwealth* v. *Urban*, 450 Mass. 608, 614 (2008). We conclude that it did not.

---

[12]The trial judge was also the judge who ruled on the defendant's motion to suppress.

[13]We are troubled by the officers' conduct in testifying concerning their assignments, in clear violation of a judge's explicit ruling. Whether their testimony was a consequence of the prosecutor's failure properly to prepare the witnesses, or a deliberate effort to evade the judge's restriction, the officers should not have testified as they did.

In her closing argument, the prosecutor made no mention of drug activity or other prior conduct. Although the implication that the defendant was involved with drugs was potentially prejudicial, testimony that the officers were conducting narcotics surveillance when they observed the defendant holding a firearm, without more to suggest that the defendant was the primary target of the surveillance operation, would have had little effect on the jury's verdict.

*Conclusion.* The denials of the motion to suppress and of the motion for a mistrial are affirmed. The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*