COMMONWEALTH *vs.* FREDERICK T. HOLDER.

Stealing goods in another of the United States, formerly a colony of Great Britain, and bringing them into this commonwealth, may be punished as larceny here. THOMAS, J. dissenting.

INDICTMENT for stealing at Milford in this county goods of Henry W. Dana. At the trial in the court of common pleas there was evidence that the defendant broke and entered the shop of said Dana at Smithfield in the State of Rhode Island, and stole the goods mentioned in the indictment, and brought them into this county. The defendant asked that the jury might be instructed that the indictment could not be maintained, because the courts of this state could not take cognizance of a larceny committed in another state. But *Mellen*, C. J. refused so to instruct the jury, and instructed them that the evidence, if believed, was sufficient to support the indictment. The defendant, being convicted, alleged exceptions.

*G. F. Verry*, for the defendant.

*J. H. Clifford*, (Attorney General,) for the Commonwealth.

SHAW, C. J. A majority of the court are of opinion that this case must be considered as settled by the case of *Commonwealth* v. *Uprichard*, 3 Gray, 434, and the principles stated, and the precedents cited. Though to some extent these colonies before the Revolution were distinct governments, and might have different laws, it was not unreasonable, as they all derived their criminal jurisprudence from the English common law, to regard the rule applicable to a theft, in an English county, of goods carried by the thief into another, as analogous, and adopt it. We are of opinion that Massachusetts did adopt it, and this is established by judicial precedent, before and since the Revolution, and is now settled by authority as the law of this state.

THOMAS, J. The real question in this case is, whether the defendant can be indicted, convicted and punished in this commonwealth for a larceny committed in the State of Rhode Island. If it were a new question, it would be enough to state it. The obvious, the conclusive answer to the indictment would

be, that the offence was committed within the jurisdiction of another, and, so far as this matter is concerned, independent state, of whose law only it was a violation, and of which its courts have exclusive cognizance. By the law of that state the offence is defined and its punishment measured. By the law which the defendant has violated he is to be tried. Whether the acts done by him constitute larceny, and, if so, of what degree, must be determined by that law. Its penalties only he has incurred. Its means of protection and deliverance he may justly invoke, and especially a trial by a jury of his peers in the vicinage where the offence was committed.

This obvious view of the question will be found upon reflection, I think, to be the only one consistent with the reasonable security of the subject or the well defined relations of the states. It is well known that the laws of the states upon the subject of larceny materially differ. In most of them the common law of larceny has been greatly modified by statutes. The jurisprudence of all is not even based on the common law. In several the civil law obtains.

In cases where a difference of law exists, by which law is the defendant to be judged; the law where the offence (if any) was committed, or where it is tried? For example, the defendant is charged with taking with felonious intent that which is parcel of the realty, as the gearing of a mill or fruit from a tree. By the *St.* of 1851, *c.* 151, the act is larceny in this commonwealth. If it appears that in the state where the act was done it was, as under the common law, but a trespass, which law has the defendant violated, and by which is he to be tried? Or suppose the defendant to be charged with the stealing of a slave — a felony in the state where the act is done, but an offence not known to our laws. The difficulty in both cases is the same. You have not only conflicting jurisdictions, but different rules of conduct and of judgment.

But supposing the definitions of the offence to be the same in the two states, the punishments may be very different. Where such difference exists, which penalty has the defendant justly incurred, and which is he to suffer? For example, the offence

is punishable by imprisonment in Rhode Island, say for a year; in this state the same offence is punishable by imprisonment from one to five years; is the defendant liable to the heavier punishment? Or suppose he has been convicted in Rhode Island, and in consideration of his having indemnified the owner for the full value of the goods taken, his punishment has been more mercifully measured to him, can he, after he has suffered the punishment, and because the goods were, after the larceny, brought into this state, be made to suffer the penalty of our law for the same offence? Or suppose him to have been convicted in Rhode Island and a full pardon extended to him, can he be tried and convicted and punished here?

Again; the power to indict, convict and punish the offence in this state proceeds upon the ground that the original caption was felonious. If the original taking was innocent or but a trespass, the bringing into this state would not constitute a larceny. You must therefore look at the law of the state where the first caption was made. And how is the law of another state to be ascertained? What is the law of another state is a question of fact for the jury. The jury in this way are in a criminal case made not only to pass upon the law, but to pass upon it as a matter of evidence, subject, strictly speaking, neither to the direction nor the revision of the court.

Again; the defendant is indicted here for the larceny committed in Rhode Island; while in custody here awaiting his trial, he is demanded of the executive of this state by the executive of Rhode Island as a fugitive from the justice of that state, under the provisions of the Constitution of the United States, art. 4, § 2, and the U. S. St. of 1793, *c.* 45. Is he to be tried here, or surrendered up to the state where the offence was committed and tried there? Or if he has been already tried and convicted and punished in this state, is he to be sent back to Rhode Island to be tried and punished again for the same offence? And would his conviction and punishment here be any answer to the indictment there? Or if he has been fully tried and acquitted here and then demanded by the executive of Rhode Island, is he, upon requisition, to be sent to that state to be again tried, to

be twice put in jeopardy for the same offence ? It is quite plain no ground in law would exist for a refusal to surrender.

The defendant was indicted for larceny, not for the offence of bringing stolen goods into the Commonwealth. He was, under the instruction of the presiding judge, tried for the larceny in Rhode Island, was convicted for the larceny in Rhode Island, and must be punished, if at all, for the larceny in Rhode Island. And, under the rule given to the jury, is presented a case where, for one and the same moral act, for one and the same violation of the rights of property, the subject may be twice convicted and punished. Nay more, if a man had stolen a watch in Rhode Island and travelled with it into every state of the Union, he might, under the rule given to the jury, if his life endured so long, be indicted and punished in thirty two states for one and the same offence.

And it is well to observe that it is the retention of the property which is the cause of the new offence, and the carrying of it from the place of caption into another state. If the defendant had stolen property in Rhode Island, and consumed or destroyed it, and then had removed to Massachusetts, but one offence would have been committed, and that in Rhode Island.

Such are some of the more obvious difficulties attending the position that an offence committed in one state may be tried and punished in another. The doctrine violates the first and most elementary principles of government. No state or people can assume to punish a man for violating the laws of another state or people. The surrender of fugitives from justice, whether under the law of nations, treaties with foreign powers, or the provisions of the Constitution of the United States, proceeds upon the ground that the fugitive cannot be tried and punished by any other jurisdiction than the one whose laws have been violated. Even in cases of the invasion of one country by the subjects of another, it is the violation of its own laws of neutrality, that the latter country punishes, and not the violation of the laws of the country invaded. The exception of piracy is apparent rather than real. Piracy may be punished by all nations, because it is an offence against the law of nations upon the seas, which are the highways of nations.

Commonwealth *v.* Holder.

The ruling of the learned chief justice of the common pleas was, I may presume, based upon the decisions of this court in *Commonwealth* v. *Cullins*, 1 Mass. 116, and *Commonwealth* v. *Andrews*, 2 Mass. 14.

It is certainly the general duty of the court to adhere to the law as decided. Especially is this the case where a change in the decision would impair the tenure by which the rights and property of the subject are held. But even with respect to these, where it is clear a case has been decided against the well settled principles of law and of reason, it is the duty and the practice of the courts to revise such decision; and to replace the law on its old and solid foundation. This is peculiarly the duty of the courts where such decision works its injustice by impairing the personal rights of the citizen, or by subjecting him to burdens and penalties which he never justly incurred.

In my judgment, the courts of this commonwealth have not, and never had, under the Constitution of the United States or otherwise, the rightful power to try a man for an offence committed in another state. It is in vain, it seems to me, to attempt to preserve, and make rules of conduct, decisions founded upon wholly erroneous views of the relations which the states of the Union bear to each other under the Constitution, and in conflict with well settled principles of constitutional and international law.

I should be content to rest my dissent from the judgment of the court in the case at bar upon the principles affirmed in the recent case of *Commonwealth* v. *Uprichard*, 3 Gray, 434. In effect that case overrules, as its reasoning thoroughly undermines, the earlier cases. They cannot stand together.

But as the decision in the case at bar rests upon the authority of the cases in the first and second of Massachusetts Reports, it may be well to examine with care the grounds upon which they rest. Such an examination will show, I think, not only that the cases were put upon erroneous views as to the relation of the states, but that they were also unsound at common law.

In the case of *Commonwealth* v. *Cullins*, a jury trial where

three judges of the court were present, the evidence showing that the goods were taken in the State of Rhode Island, Mr. Justice Sedgwick, who charged the jury, said that " the court were clearly of opinion that stealing goods in one state and conveying stolen goods into another state was similar to steal ing goods in one county and conveying the stolen goods into another, which was always holden to be felony in both coun ties." Whatever the points of similarity, there was this obvious and vital difference, to wit, that conviction in one county was a bar to conviction in another, and that conviction in one state is no bar to conviction in another state.

It was a doctrine of the common law, that the asportation of stolen goods from one county to another was a new caption and felony in the second county; a legal fiction, devised for greater facility in convicting the offender where it was uncertain where the first caption took place. The foundation of the rule was that the possession of the owner continued, and that every moment's continuance of the trespass may constitute a caption as well as the first taking. But in what respect was the taking in one state and conveying into another state similar to the tak- ing in one county and conveying into another county? It could only be "similar" because the legal relation which one state bears to another is similar to that which one county bears to another; because, under another name, there was the same thing. If a man is to be convicted of crime by analogy, the analogy certainly should be a close one. Here it was but a shadow. In the different counties there was one law, one mode of trial, the same interpretation of the law and the same punishment. The rule, mode of trial and jurisdiction were not changed.

The States of the Union, it is quite plain, hold no such rela- tion to each other. As to their internal police, their law of crimes and punishments, they are wholly independent of each other, having no common law, and no common umpire. The provision, indeed, in the Constitution of the United States for surrendering up fugitives from justice by one state to another is a clear recognition of the independence of the states of each

other in these regards. It excludes the idea of any jurisdiction in one state over crimes committed in another, and at the same time saves any necessity or reason for such jurisdiction. Nor is there any provision in the Constitution of the United States which impairs such independence, so far as the internal police of the states is concerned. On the other hand, the widest diversity exists in the institutions, the internal police and the criminal codes of the several states, some of them, as Louisiana and Texas, having, as the basis of their jurisprudence, the civil, and not the common law. In the relation which Louisiana holds to this state can any substantial analogy be found to that which Surrey bears to Middlesex?

An analogy closer and more direct could have been found in the books when *Commonwealth* v. *Cullins* was decided. It was that of Scotland to England, subject both to one crown and one legislature; yet it had been decided that when one stole goods in Scotland, and carried them to England, he could not be convicted in the latter country. *Rex* v. *Anderson,* (1763,) 2 East P. C. 772. 2 Russell on Crimes, (7th Amer. ed.) 119. Or an analogy might have been found in the cases of goods stolen on the high seas and brought into the counties of England, of which the courts of common law refused to take cognizance, because they were not felonies committed within their jurisdiction. 1 Hawk. *c.* 33, § 52. 3 Inst. 113. In these cases a test would have been found, applicable to the alleged larceny of Cullins, to wit, the offence was not committed in a place within the jurisdiction of the court, but in a place as foreign to their jurisdiction, so far as this subject matter was concerned, as England or the neighboring provinces. The case of *Commonwealth* v. *Cullins* has no solid principle to rest upon.

The case of *Commonwealth* v. *Andrews,* two years later, may be held to recognize the rule laid down in *Commonwealth* v. *Cullins,* though it was an indictment against Andrews as the receiver of goods stolen by one Tuttle in New Hampshire; and though there is, at the least, plausible ground for saying that there was a new taking by Tuttle at Harvard in the county where the defendant was indicted and tried. Indeed, Mr. Jus-

tice Parker takes this precise ground; though he adds that "the common law doctrine respecting counties may well be extended by analogy to the case of states, united, as these are, under one general government." If that union was with reference to or concerned the internal police or criminal jurisprudence of the several states; if it was not obviously for other different, distinct and well defined purposes; and if we could admit the right of the court to extend by analogy the provisions of the criminal law and so to enlarge its jurisdiction; there would be force in the suggestion. As it is, we must be careful not to be misled by the errors of wise and good men.

Judge Thatcher puts the case wholly on the felonious taking at Harvard.

Mr. Justice Sedgwick, though having the same view as to the taking at Harvard, does not rest his opinion upon it, but upon the ground that the continuance of the trespass is as much a wrong as the first taking. This doctrine applies as well where the original caption was in a foreign country, as in another state of the Union. If you hold that every moment the thief holds the property he commits a new felony, you may multiply his offences *ad infinitum;* but in so carrying out what is at the best a legal fiction, you shock the common sense of men and their sense of justice. Mr. Justice Sedgwick will not admit the force of the objection that the thief would be thus twice punished, but regards with complacency such a result. But as we are to presume that the punishment is graduated to the offence, and, as far as punishment may, expiates the wrong, the mind shrinks from such a consequence. But saying that whatever he might think upon this question if it were *res integra,* he puts his decision upon the case of *Paul Lord* decided in 1792, and that of *Commonwealth* v. *Cullins.*

Chief Justice Dana relies upon the cases before stated and a general practice, and also upon the principle that every moment's felonious possession is a new caption.

Such was the condition of the law in this state when the case of *Commonwealth* v. *Uprichard* came before the court. In that case the original felonious taking was in the province of

Commonwealth *v.* Holder.

Nova Scotia. The bringing of the stolen goods into this commonwealth was held not to be a larceny here. But if it be true that every act of removal or change of possession is a new caption and asportation; that every moment's continuance of the trespass is a new taking; if this legal fiction has any life, it is difficult to see why the bringing of the goods within another jurisdiction was not a new offence. No distinction in principle exists between this case, and a felonious taking in another state and bringing into this. So far as the law of crimes and punishments is concerned, the states are as independent of each other as are the states and the British Provinces.

The case of *Commonwealth* v. *Uprichard* rests, I think immovably, upon the plain grounds that laws to punish crime are local and limited to the boundaries of the states which prescribe them; that the commission of a crime in another state or country is not a violation of our law, and does not subject the offender to any punishment prescribed by our law. These are principles of universal jurisprudence, and as sound as they are universal.

It is sometimes said that after all the offender is only tried and convicted for the offence against our laws. This clearly is not so. It is only by giving force to the law of the country of the original caption, that we can establish the larceny. It is the continuance of the caption felonious by the law of the place of caption. In the directions given to the jury such effect is given to the laws of Rhode Island. The jury were instructed that if the defendant broke and entered into the shop of Henry W. Dana in Smithfield in Rhode Island, and thence brought the goods into this county, the indictment could be maintained. The felonious taking in Rhode Island is the inception and groundwork of the offence. The proceeding is in substance and effect but a mode of enforcing the laws of and assuming jurisdiction over offences committed in another state.

For the reasons thus imperfectly stated, I am of opinion that the instructions of the court of common pleas were erroneous, that the exceptions should be sustained, the verdict set aside and a new trial granted.

*Exceptions overruled.*