COMMONWEALTH *vs.* JAMES BRADLEY.

No. 92-P-475.

Hampden. March 3, 1993. - November 23, 1993.

Present: KASS, GREENBERG, & LAURENCE. JJ.

*Controlled Substances. Practice, Criminal,* Sentence, Indictment, Grand
jury proceedings. *Evidence,* Grand jury proceedings, Rebuttal. *Grand
Jury. Identification. Witness,* Recalling.

In a criminal case, no error appeared in the judge's sentencing the defend-
ant pursuant to the provisions of G. L. c. 94C, § 32A (*d*), rather than
the less stringent provisions of § 32A (*b*), after his conviction as a sub-
sequent offender for unlawful distribution of cocaine in violation of
G. L. c. 94C, § 32A (*c*). [527-528]

Where a criminal defendant would not have had any likelihood of success
in moving to dismiss indictments on the ground that the Common-
wealth allegedly failed to disclose to the grand jury that indicted him
certain exculpatory information presented to a prior grand jury, there
was no merit to his claim that defense counsel was ineffective for fail-
ure to raise that issue. [528-531]

At a criminal trial, the judge did not abuse his discretion by refusing to
allow the defendant to recall a Commonwealth witness as a rebuttal
witness. [531-532]

INDICTMENT found and returned in the Superior Court De-
partment on October 12, 1989.

The case was tried before *William W. Simons,* J.

*Robert J. Carnes* for the defendant.

*Ellen Berger,* Assistant District Attorney, for the
Commonwealth.

GREENBERG, J. On the evidence presented, the jury were
warranted in finding that the defendant participated in the
sale of .42 grams of cocaine to an undercover police officer.
He was convicted on an indictment charging him with un-
lawful distribution of cocaine in violation of G. L. c. 94C,

§ 32A(*c*).[1] The indictment also charged the defendant as a subsequent offender.

Immediately after the jury verdict was recorded, the judge conducted a bench trial and found the defendant guilty as a subsequent offender. Confusion then ensued over which subsection of 32A governed the sentencing of the defendant.[2] The judge informed the parties that, because the conviction was under subsection (*c*), he planned to sentence the defendant pursuant to subsection (*d*) of section 32A, and the prosecution ultimately supported the judge's decision.[3]

---

[1]The Legislature has enacted two statutory provisions making the possession of cocaine with intent to distribute unlawful: G. L. c. 94C, § 32A (*a*) & (*c*). The defendant was indicted under both subsections (*a*) and (*c*), but only one charge was sent to the jury. The indictment under § 32A(*a*) was dismissed. See *Cedeno* v. *Commonwealth*, 404 Mass. 190, 193-197 (1989) (affirming the constitutionality of these provisions and holding that choice of the subsection under which to charge a defendant remains a matter of prosecutorial discretion).

Over the years, the Legislature gradually has singled out offenses involving cocaine and other named Class B substances for harsher punishments. By St. 1982, c. 650, § 7, the Legislature delineated a sentencing scheme for all class B substances, but, in subsection (*c*), singled out phencyclidine distribution as requiring a minimum sentence of two and one-half years in the State prison. A repeat offender provision that applied to all offenses outlined in the statute was included. In 1988, subsection (*c*) was changed again to include cocaine distribution in the category requiring a minimum mandatory sentence. St. 1988, c. 125, § 1. At the same time, another subsequent offender subsection, (*d*), was added. It imposed a more stringent sentence upon repeat offenders convicted under subsection (*c*). St. 1988, c. 125, § 2. The most recent alteration to subsection (*c*) occurred in 1991, when the Legislature added any substance which contains methamphetamine to that subsection. St. 1991, c. 391.

[2]Two sets of indictments were secured against the defendant from grand juries. In mid-August of 1989, the initial two indictments issued against him for distribution of cocaine. On October 11, 1989, the Commonwealth resubmitted the case to the grand jury. This time the defendant was indicted for the same offenses, but as a subsequent offender. The prosecution, however, failed to specify the subsection under which the defendant was charged with this status. Defense counsel did not become aware of the two sets of indictments until the trial was under way.

[3]The sentence imposed by the trial judge — five to seven years — fell well within the confines of both subsections. The problem arose because, at sentencing, the judge believed that the minimum sentence he could impose was five years.

1. For the first time on appeal, the defendant claims that he is entitled to be resentenced under the less stringent subsequent offender provision, subsection (*b*), of § 32A. Since the indictment made no reference to subsection (*d*), he claims that, to the extent he was convicted as a subsequent offender, his punishment could be imposed only under subsection (*b*). He also argues two other issues on appeal of lesser significance.[4] We affirm his conviction and the term of imprisonment imposed by the sentencing judge.

Although there are considerable similarities in the sentencing options available to a judge under the two subsections, § 32A (*d*) requires the imposition of a minimum mandatory term of five years and not more than fifteen years in State prison. By comparison, subsection (*b*) sets the minimum penalty at not less than three years and the maximum at not more than ten years in State prison. Defense counsel never lodged an objection to the defendant's treatment as a repeat offender under subsection (*d*). There was ample opportunity to do so: upon discovery of the second set of indictments, at the bench trial on the defendant's repeat offender status, and at the sentencing stage of the proceedings. Failure of the defendant to raise such a claim constitutes a waiver. G. L. c. 277, § 47A. Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979). See *Commonwealth* v. *Rodriguez*, 17 Mass. App. Ct. 547, 556 (1984).

Even if the issue were preserved by a proper objection, the defendant has not shown any prejudice as a result of the Commonwealth's failure to specify the subsection under which he was charged. The charging document need not cite the statute defining the offense nor use its precise language in order to pass muster. *Commonwealth* v. *Jiminez*, 22 Mass. App. Ct. 286, 296 (1986). See Mass.R.Crim.P. 4(a), 378

---

[4]In his brief the defendant contested the adequacy of the second offender charges against him. His claim was that probable cause as to his status was not established before the second grand jury. See *Commonwealth* v. *McCarthy*, 385 Mass. 160, 161-162 (1982). The Commonwealth submitted sufficient evidence that probable cause existed to find that the defendant was a repeat offender. Accordingly, at oral argument, the defendant properly waived this issue.

Mass. 849 (1979). An indictment is adequate if, among other
things, it apprises· a defendant of the nature of the charges
against him to enable him to prepare an adequate defense.
See *Van Liew* v. *United States*, 321 F.2d 664, 673 (5th Cir.
1963). Here, the indictment sufficiently informed the defend-
ant of all the elements of the current offense and the Com-
monwealth's reliance upon the prior conviction to support the
charge of subsequent offender. See *McDonald* v. *Common-
wealth*, 173 Mass. 322, 327 (1899).[5]

Finally, the defendant has not indicated how his defense
strategy was adversely affected by the form of the indict-
ment. He has not asserted that he would have demanded a
jury trial on the subsequent offender allegation if he had
known a sentence would be imposed under subsection (*d*).
Compare *Commonwealth* v. *Crocker*, 384 Mass. 353, 356
(1981).[6]

We find no prejudice to the preparation and presentation
of the defendant's case that would justify ordering the trial
judge to resentence him under the more lenient subsection.

2. The defendant contends that trial counsel should have
filed a motion to dismiss the second set of indictments be-
cause of the Commonwealth's alleged failure to disclose ex-
culpatory information presented to the first grand jury. We
do not fault counsel's choice not to raise the issue. Such a
motion did not have any likelihood of success; thus, the de-
fendant has not shown that he was deprived of a substantial

---

[5]This situation is analogous to those cases where the prosecution, in pre-
paring the indictment, cited to the incorrect statutory chapter and section.
As long as the prosecution provided notice to the defendant by properly
describing the offense charged in the body of the indictment and the de-
fendant did not demonstrate prejudice, the indictment was sufficient. See
*Commonwealth* v. *Jiminez*, 22 Mass. App. Ct. 286, 295-296 (1986). See
also *United States* v. *Malicoate*, 531 F.2d 439 (10th Cir. 1975); *United
States* v. *Walker*, 557 F.2d 741, 746 (10th Cir. 1977).

[6]The rule is otherwise when a defendant pleads guilty. *Commonwealth*
v. *Crocker*, *supra* at 356 n.3. Mass.R.Crim.P. 12(c)(3)(B), 378 Mass. 898
(1979).

ground of defense.[7] *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The trial ultimately hinged on the issue of the defendant's identification as the person from whom an undercover officer purchased cocaine. The defendant mistakenly contends that, in the first grand jury presentment, an undercover officer testified that she initially identified the defendant upon his arrest a short time after purchasing crack cocaine from him. In contrast, the defendant asserts, at the second grand jury presentment, the officer testified that she first identified the defendant through a photographic array. The prosecutor never disclosed to the second grand jury the officer's prior testimony regarding the identification of the defendant. Accordingly, the defendant's argument is that the prosecution withheld exculpatory information, namely, a prior inconsistent statement of the key witness where identification was the central issue. See *Commonwealth* v. *O'Dell*, 392 Mass. 445 (1984). See also *Commonwealth* v. *Connor*, 392 Mass. 838, 853-855 (1984); *Commonwealth* v. *Mayfield*, 398 Mass. 615, 620-621 (1986).

We see no reason to conclude that the officer's testimony at the first grand jury proceeding contained a prior inconsistent statement concerning her initial identification of the defendant. In the first grand jury proceeding, she was asked to describe the purchase. The prosecution then asked the following series of questions to which the witness gave the following answers:

"Q: Was this individual [the defendant] subsequently identified?
"A: The first male was.
"Q: Who was he identified as?

---

[7]The defendant incorrectly claims that a successful motion to dismiss an indictment on this basis, see, e.g., *Commonwealth* v. *O'Dell*, 392 Mass. 445 (1984), results in a dismissal of the indictment with prejudice. The law is quite the contrary. *Id.*, at 447. A dismissal with prejudice is the exception and not the norm. See, e.g., *Commonwealth* v. *Petras*, 26 Mass. App. Ct. 483 (1988) (reversed the motion judge's decision to dismiss the indictments with prejudice).

"A: James Bradley with a date of birth of June 12,
1963.

"Q: How was the identification made Ma'am?

"A: He was arrested a short time later after that."

When read in context, the officer's responses do not inti-
mate that *she* personally identified the defendant at the time
of arrest. Rather, her testimony was to the effect that the
defendant was initially arrested by another officer. Given the
context of the situation — that the witness was an under-
cover officer who purchased narcotics from suspects, coupled
with her trial testimony that she made the purchases and the
other officers continued the investigation — it could reasona-
bly be inferred that her undercover operation would be at
risk in the event she participated in the defendant's arrest.

Even if we accept the defendant's interpretation of the tes-
timony and conclude that this evidence was potentially excul-
patory, the argument fails. Prosecutors are not required to
present all evidence of this nature to the grand jury. *Com-
monwealth* v. *Buckley*, 410 Mass. 209, 220 (1991), and cases
cited.[8] "[T]he defendant must show that the presentation of
the false or deceptive evidence probably influenced the grand
jury's determination to hand up an indictment." *Common-
wealth* v. *Mayfield, supra* at 621. In *Commonwealth* v. *Mc-
Gahee*, 393 Mass. 743, 746 (1985), the prosecution disclosed
that a witness, who did not testify before the grand jury, had
successfully selected the defendant's picture from a photo-
graphic array but neglected to disclose that the same witness
had been unable to identify the defendant at a probable
cause hearing. See *Commonwealth* v. *Pace*, 22 Mass. App.
Ct. 916, 917 (1986) (victim failed to identify the defendant
as her attacker in photographic array from which she chose a
different individual and this failure was not disclosed to the
grand jury). In both *Commonwealth* v. *McGahee* and *Com-
monwealth* v. *Pace*, the courts held that the grand jury pro-

---

[8]For an in-depth discussion of the standards to be applied in the deter-
mination of the impairment of grand jury proceedings see *Commonwealth*
v. *Mayfield, supra* at 619-622, and *Commonwealth* v. *Pond*, 24 Mass.
App. Ct. 546, 550-551 (1987).

ceedings were not impaired by the prosecution's failure to disclose these problems. Here, the witness's testimony suggested an inconsistency as to the events that led to the officer's initial identification of the defendant. While this might raise some doubt as to the witness's credibility, her testimony is not undermined to the extent that the integrity of the grand jury proceeding was impaired.

Since the likelihood of success on the motion was negligible, defense counsel was not ineffective for failure to raise such a claim. See *Commonwealth v. Garcia*, 34 Mass. App. Ct. 386, 391 (1993).

3. Lastly, the defendant contends that he was denied a fair trial as guaranteed under the State and Federal Constitutions because the judge refused to allow him to recall the undercover officer as a rebuttal witness. Once again, this claim is derived from the alleged inconsistency between her identification at trial and her testimony before the first grand jury. We recognize that the defendant received the transcript of the grand jury testimony after the officer completed her testimony at the conclusion of the Commonwealth's case. Even if we presume an inability to cross-examine her on the supposed contradictions about the identification, there was no error. "Whether or not a witness should be recalled in a criminal case is a matter entrusted to the sound discretion of the trial judge." *Commonwealth v. Harmon*, 410 Mass. 425, 433 (1991), quoting from *Commonwealth v. Hicks*, 375 Mass. 274, 276 (1978). A judge is not required to allow a party to recall a witness. *Commonwealth v. Shaw*, 29 Mass. App. Ct. 39, 42 (1990). Nothing extraordinary appears here, and the judge's ruling was justified because the officer's first grand jury testimony contained no material tending to contradict her testimony at trial.

If we assume, by some stretch of the imagination, that the officer's first grand jury testimony was inconsistent with her testimony at trial with respect to her identification of the defendant, the judge did not abuse his discretion. Defense counsel suggested that a way to "cure" any problem was to admit the grand jury minutes in evidence, and the judge sub-

mitted them for the jury's consideration. More than that, defense counsel emphasized the perceived discrepancy in his closing argument. Whether a further cross-examination of the witness would have materially assisted the defense remains in the realm of speculation. On the witness stand, she could easily have explained any discrepancy in her testimony.

*Judgment affirmed.*