NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12259

COMMONWEALTH  vs.  MOSES EHIABHI.


Suffolk.     May 4, 2017. - October 13, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, Budd,
& Cypher, JJ.[1]


Controlled Substances.  Assault and Battery on Certain Public Officers and Employees.  Constitutional Law, Sentence, Separation of powers, Search and seizure.  Practice, Criminal, Sentence, Motion to suppress, Instructions to jury.  Search and Seizure, Motor vehicle, Impoundment of vehicle, Inventory.



Indictments found and returned in the Superior Court Department on January 13, 2014.

A pretrial motion to suppress evidence was heard by Mary K. Ames, J.; the cases were tried before Elizabeth M. Fahey, J., and the correctness of the sentence was reported by her to the Appeals Court.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Zachary Hillman, Assistant District Attorney, for the Commonwealth.
Sarah E. Dolven for the defendant.


[1] Justice Hines participated in the deliberation on this case prior to her retirement.

Patrick Levin, Committee for Public Counsel Services, & Chauncy B. Wood, for Committee for Public Counsel Services & another, amici curiae, submitted a brief.

CYPHER, J.  This case examines a sentencing scheme that punishes the same conduct with different mandatory minimum sentences.  See G. L. c. 94C, § 32A (b), (d).  Both subsections punish possession with intent to distribute a class B substance, but § 32A (b) carries a mandatory minimum sentence of two years while § 32A (d) carries a mandatory minimum sentence of three and one-half years.  In the law's current form, § 32A (a) punishes first-time distribution of any of forty class B substances, including phencyclidine (PCP), cocaine, and methamphetamine; § 32A (b) punishes subsequent distribution of a class B substance; § 32A (c) punishes first-time distribution of PCP, cocaine, or methamphetamine; and § 32A (d) punishes subsequent distribution of PCP, cocaine, or methamphetamine.  G. L. c. 94C, § 32A.[2]  The defendant, Moses Ehiabhi, was charged

---

[2] In relevant part, G. L. c. 94C, § 32A, provides:

"(a) Any person who knowingly or intentionally manufactures, distributes, dispenses, or possesses with intent to manufacture, distribute or dispense a controlled substance in Class B of [§ 31] shall be punished by imprisonment in the [S]tate prison for not more than ten years, or in a jail or house of correction for not more than two and one-half years, or by a fine of not less than [$1,000] nor more than [$10,000], or both such fine and imprisonment.

"(b) Any person convicted of violating this section

after one or more prior convictions of manufacturing, distributing, dispensing, or possessing with the intent to manufacture, distribute or dispense a controlled substance as defined by [§ 31] of this chapter under this or any other prior law of this jurisdiction or of any offense of any other jurisdiction, [F]ederal, [S]tate, or territorial, which is the same as or necessarily includes the elements of said offense shall be punished by a term of imprisonment in the [S]tate prison for not less than [two] nor more than ten years.  No sentence imposed under the provisions of this section shall be for less than a mandatory minimum term of imprisonment of [two] years and a fine of not less than [$2,500] nor more than [$25,000] may be imposed but not in lieu of the mandatory minimum term of imprisonment, as established herein.

"(c) Any person who knowingly or intentionally manufactures, distributes, dispenses or possesses with intent to manufacture, distribute or dispense phencyclidine or a controlled substance defined in clause (4) of paragraph (a) or in clause (2) of paragraph (c) of class B of § 31 shall be punished by a term of imprisonment in the [S]tate prison for not less than two and one-half nor more than ten years or by imprisonment in a jail or house of correction for not less than one nor more than two and one-half years.  No sentence imposed under the provisions of this section shall be for less than a mandatory minimum term of imprisonment of one year and a fine of not less than [$1,000] nor more than [$10,000] may be imposed but not in lieu of the mandatory minimum one year term of imprisonment, as established herein.

"(d) Any person convicted of violating the provisions of subsection (c) after one or more prior convictions of manufacturing, distributing, dispensing or possessing with the intent to manufacture, distribute, or dispense a controlled substance, as defined in [§ 31] or of any offense of any other jurisdiction, either [F]ederal, [S]tate or territorial, which is the same as or necessarily includes, the elements of said offense, shall be punished by a term of imprisonment in the [S]tate prison for not less than [three and one-half] nor more than fifteen years and a fine of not less than [$2,500] nor more than [$25,000] may be imposed but not in lieu of the mandatory minimum term of imprisonment, as established herein."

and convicted of possession with intent to distribute cocaine, second offense, under § 32A (c) and (d), but the judge, over the objection of the Commonwealth, sentenced pursuant to § 32A (a) and (b).[3]

Pursuant to G. L. c. 231, § 111,[4] and Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004),[5] the trial judge reported the

---

Section 31 defines cocaine as "[c]oca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine." G. L. c. 94C, § 31 Class B (a) (4).

[3] The defendant faced three additional charges: resisting arrest, in violation of G. L. c. 268, § 32B; operating a motor vehicle while under the influence of a controlled substance, in violation of G. L. c. 90, § 24 (1) (a) (1); and assault and battery on a police officer, in violation of G. L. c. 265, § 13D. The defendant prevailed in his motion for a required finding of not guilty as to the charge of resisting arrest; was acquitted of the operating while under the influence of marijuana charge; and was convicted of assault and battery on a police officer.

[4] General Laws c. 231, § 111, provides in relevant part: "A justice of the [Superior Court] . . . , after verdict or after a finding of the facts by the court, may report the case for determination by the [A]ppeals [C]ourt."

[5] In relevant part, Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004), provides:

"If, prior to trial, or, with the consent of the defendant, after conviction of the defendant, a question of law arises which the trial judge determines is so important or doubtful as to require the decision of the Appeals Court, the judge may report the case so far as necessary to present the question of law arising therein."

correctness of her sentencing decision to the Appeals Court, and allowed the defendant's motion to stay the sentence pending his appeal.  The Commonwealth appeals from both the sentence and the stay of sentence.  The defendant also appeals, claiming error in the denials of his motion to suppress evidence and his motion for a required finding of not guilty on the assault and battery charge, and in the jury instruction on self-defense as to that charge.  The Appeals Court consolidated the appeals, and we transferred the case to this court on our own motion.  For the reasons detailed below, we affirm the convictions and remand to the Superior Court for resentencing.[6]

1.  <u>The reported question and the Commonwealth's appeal</u>. After the Commonwealth moved for sentencing, the judge asked why the Commonwealth had proceeded under the section of the statute that provided a harsher minimum mandatory sentence where the elements of both sections were identical.  The prosecutor explained that her office "typically" indicted cocaine charges under the enhanced section because cocaine is "considered a more dangerous substance than other items under [c]lass B, such as pills."  The prosecutor also justified her pursuit of harsher penalties in this case by the fact that the defendant was on Federal supervised release for the same crime when he committed

---

[6] We acknowledge the amicus brief of the Committee for Public Counsel Services and the Massachusetts Association of Criminal Defense Lawyers.

the new offense.

The judge rejected both arguments, concluding that ambiguity existed in the conflicting mandatory minimum sentences of two years for a repeat distributor of cocaine under § 32A (b) and three and one-half years for a repeat distributor of cocaine under § 32A (d).  The judge read this conflict to require application of the rule of lenity in favor of the less stringent sentence, citing Commonwealth v. Gagnon, 387 Mass. 567, 569, S.C., 387 Mass. 768 (1982), cert. denied, 464 U.S. 815 (1983); United States v. Shaw, 920 F.2d 1225, 1228 (5th Cir.), cert denied, 500 U.S. 926 (1991).

The Commonwealth argues that the trial judge erred in sentencing the defendant pursuant to G. L. c. 94C, § 32A (b), where he had been charged and convicted pursuant to § 32A (d), and where the prosecutor retains the discretion to charge under either subsection.  The defendant contends that the judge properly applied the rule of lenity where the statute is ambiguous in its provision of inconsistent penalties for the identical offense.  We agree with the Commonwealth that the statute is unambiguous, and preserves the prosecutor's discretion to choose among its subsections.

a.  Ambiguity.  The levels of punishment upon conviction of possession with intent to distribute a controlled substance are determined with reference to which of the five classes of

controlled substances the particular controlled substance belongs.  G. L. c. 94C, § 31.  "Such disparate sentences embody the legislative judgment differentiating certain classes of controlled substances as more detrimental to the mind or the body than others."  Commonwealth v. Chavis, 415 Mass. 703, 709 n.9 (1993).

Cocaine is listed as a class B controlled substance, with penalties provided at G. L. c. 94C, § 32A.  Section 32A was inserted into the General Laws by St. 1980, c. 436, "as part of a major revision of the Controlled Substances Act."  Commonwealth v. Neiman, 396 Mass. 754, 758 (1986).  As originally enacted, § 32A had two paragraphs.  Paragraph (a) provided a penalty of from one to ten years for first-time distribution of a class B substance, without requiring a mandatory minimum sentence, and paragraph (b) provided a mandatory minimum of three years for subsequent offenses, St. 1980, c. 436, § 4, later reduced to two years.  St. 2012, c. 192, § 13.

In the years following the enactment of § 32A, the Legislature singled out three drugs for harsher punishment than other class B substances:  PCP in 1981, St. 1981, c. 522 (adding paragraph [c] to impose one-year mandatory minimum sentence for distribution of PCP); cocaine in 1988, St. 1988, c. 125, § 1 (amending paragraph [c] to impose same penalty for distribution

of cocaine); and methamphetamine in 1991, St. 1991, c. 391 (same, for distribution of methamphetamine). See Commonwealth v. Bradley, 35 Mass. App. Ct. 525, 526 n.1 (1993) (discussing statutory history of § 32A). When the Legislature added cocaine to paragraph (c), it also inserted paragraph (d), which provided a five-year minimum sentence for subsequent offenders "convicted of violating the provisions of subsection (c)," St. 1988, c. 125, §§ 1-2; that minimum was later reduced to three and one-half years. St. 2012, c. 192, § 14. The language of paragraph (b) remained unaltered, and continues to apply to "[a]ny person convicted of violating this section." See Bradley, supra (§ 32A [b] was "[a] repeat offender provision that applied to all offenses outlined in the statute"). Cocaine, as well as PCP and methamphetamine, remain among the forty enumerated class B substances. G. L. c. 94C, § 31 Class B 2 (a) (4).

The statutory scheme, when read as a whole and in the context of its history, is not ambiguous, and therefore the rule of lenity is not applicable. "It is a fundamental tenet of due process that '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'" Gagnon, 387 Mass. at 569, quoting United States v. Batchelder, 442 U.S. 114, 123 (1979). "Under the rule of lenity, 'if we find that the statute is ambiguous or are unable to ascertain the intent of the Legislature, the defendant is entitled to the

benefit of any rational doubt.' . . . 'This principle applies to sentencing as well as substantive provisions.'" (Citations omitted). Commonwealth v. Richardson, 469 Mass. 248, 254 (2014).

We have previously rejected the argument that § 32A is unconstitutionally void for vagueness, reasoning that "[w]e simply see no significant ambiguity in the legislative intent expressed in § 32A (a) and § 32A (c)." Cedeno v. Commonwealth, 404 Mass. 190, 194 (1989). We reaffirm the view that "[i]f there is a problem in a constitutional sense in the coexistence of § 32A (a) and § 32A (c), it does not lie in any uncertainty about what those sections mean." Id. at 196. For similar reasons, the United States Supreme Court upheld two firearm statutes that punished the same conduct with different sentences. Batchelder, 442 U.S. at 116, 123 ("The provisions in issue . . . unambiguously specify the activity proscribed and the penalties available upon conviction. . . . That this particular conduct may violate both [t]itles [of the United States Code] does not detract from the notice afforded by each. Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments" [citation omitted]). Where the statute is unambiguous, the rule of lenity is inapposite. See

Richardson, 469 Mass. at 254.

b.  Prosecutorial discretion.  Because we find the rule of lenity inoperative here, we proceed to the separation of powers challenge.  Verrochi v. Commonwealth, 394 Mass. 633, 638 (1985) (construing statute to avoid constitutional difficulties).  Article 30 of the Massachusetts Declaration of Rights forbids the legislative and executive branches from exercising powers entrusted to the judicial branch if that exercise "restrict[s] or abolish[es] a court's inherent powers."  Commonwealth v. Cole, 468 Mass. 294, 301 (2014).[7]  Although "[a]n absolute division of the [executive, legislative, and judicial] functions is neither possible nor always desirable," Opinion of the Justices, 365 Mass. 639, 641 (1974), a statute impermissibly allocating a power held by only one branch to another violates art. 30.  Cole, supra at 302.

Within these constitutional confines, prosecutors enjoy considerable discretion.  See Commonwealth v. Rivas, 466 Mass. 184, 188 n.4 (2013), quoting Commonwealth v. Johnson, 75 Mass.

---

[7] Article 30 of the Massachusetts Declaration of Rights provides:

"In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them:  the executive shall never exercise the legislative and judicial powers, or either of them:  the judicial shall never exercise the legislative and executive powers, or either of them:  to the end it may be a government of laws and not of men."

App. Ct. 903, 906 (2009) ("The Commonwealth retains the authority to make the determination in the first instance of the offense with which a person in the defendant's circumstance should be charged").  Indeed, a prosecutor has the discretion to charge a defendant under multiple enhancement statutes, retaining that discretion up to the sentencing stage, where, if the prosecutor chooses, he or she may file a nolle prosequi on all but one charge.  Richardson, 469 Mass. at 254-255.  See Bynum v. Commonwealth, 429 Mass. 705, 707 (1999) (§ 32A [d] is sentence enhancement provision rather than separate crime).  Moreover, the decision to prosecute is "particularly ill-suited to judicial review."  Commonwealth v. Latimore, 423 Mass. 129, 136 (1996), quoting Wayte v. United States, 470 U.S. 598, 607 (1985).

Accordingly, a prosecutor does not infringe on the court's sentencing power merely by selecting charges from among multiple applicable subsections.  See Cedeno, 404 Mass. at 196-197 ("Prosecutors have wide ranges of discretion in deciding whether to bring criminal charges and in deciding what specific charges to bring").  See also Commonwealth v. Zwickert, 37 Mass. App. Ct. 364, 367 (1994) ("the grand jury, having before it evidence of the defendant's possession of cocaine with intent to distribute, might have framed the indictment as possession of a [c]lass B substance with intent to distribute, thus exposing the

defendant only to the lesser penalty of § 32A [a]); but because the indictment identified the Class B substance as cocaine, it was a charge under § 32A [c]").  The Batchelder Court similarly rejected the concern that legislative overlap had endowed the prosecutor with "unfettered" discretion:

> "[T]here is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements.  In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context."

Batchelder, 442 U.S. at 125.  Compare Cole, 468 Mass. at 304 (invalidating under art. 30 statute authorizing parole board to impose new mandatory sentences).

Section 32A thus does not represent an executive usurpation of judicial sentencing powers, but an appropriate exercise of prosecutorial discretion.  That discretion, although broad, remains constitutionally constrained by the equal protection clause of the Fourteenth Amendment to the United States Constitution.

The equal protection clause prohibits selective enforcement "based upon an unjustifiable standard such as race, religion, or other arbitrary classification."  Oyler v. Boles, 368 U.S. 448, 456 (1962).  To prevail on a claim of selective prosecution, a defendant must demonstrate "that a broader class of persons than

those prosecuted has violated the law, . . . that failure to prosecute was either consistent or deliberate, . . . and that the decision not to prosecute was based on impermissible classification such as race, religion, or sex" (citations omitted). Commonwealth v. Franklin, 376 Mass. 885, 894 (1978). Unless the defendant makes that prima facie showing, "we presume that criminal arrests and prosecutions are undertaken in good faith, without intent to discriminate." Commonwealth v. King, 374 Mass. 5, 22 (1977). At oral argument, the defendant urged us to consider the issue of selective prosecution, but did not argue it in his brief or present us with a record that would allow us to evaluate such a claim.

The judge's decision not to sentence the defendant pursuant to the statutes under which he was properly charged and convicted -- § 32A (c) and (d) -- was error.

2. The defendant's appeal. a. Motion to suppress. After an evidentiary hearing, the motion judge found the following facts, which we supplement where necessary by uncontroverted testimony. See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008). At approximately 2 A.M. on June 27, 2013, Boston police Officers Steven Dodd and Andrew Hunter were patrolling the Roxbury neighborhood of Boston.[8] The

---

[8] Dodd was the Commonwealth's only witness at the hearing, and the motion judge credited his testimony in its entirety.

officers were traveling in an unmarked cruiser on Norfolk Avenue. As they approached the Burrell Street intersection, Dodd observed a motor vehicle turn onto Norfolk Avenue, veer slightly into the opposite lane, and begin traveling in the opposite lane on a two-way street. Dodd activated his lights to initiate a traffic stop.

Although Norfolk Avenue is a two-way street, the vehicle pulled over to the street's left side. When Dodd approached, he observed the defendant's eyes to be red and glassy, and smelled the odor of burnt marijuana. In initial conversation with the defendant, who was driving, Dodd observed the defendant's speech to be slurred. A female passenger, not wearing a seat belt, also appeared impaired. Dodd further observed on the front center console a plastic soda bottle containing a rolled-up sandwich bag.

Upon request, the defendant produced a valid driver's license and an expired rental agreement for the motor vehicle.[9] When Dodd asked whether anyone had been smoking marijuana, the passenger responded that they had been smoking before leaving

---

The defendant's only witness was his father. The judge made no credibility findings about the father.

[9] The one-week rental agreement was dated June 4, 2013. Therefore, by the time of the traffic stop, the vehicle should have been returned at least two weeks earlier. The motion judge did not credit testimony to the effect that the defendant had extended the agreement by telephone, where he produced no documentation in support of the claim.

Burrell Street. The passenger produced a Massachusetts identification card but no driver's license, and was cited for failure to wear a seat belt.

In the course of this preliminary investigation, Dodd formed the opinion that the defendant was operating a motor vehicle while under the influence of marijuana, and that his driving was impaired as a result. Dodd concluded that he would not permit the defendant to resume operation of the vehicle, because he determined that to do so would create a danger to the public. Without having yet decided whether he would make an arrest, Dodd ordered the defendant out of the vehicle in order to further assess his intoxication level. No field sobriety tests were performed.

At this time, Dodd also decided to have the vehicle towed and impounded for safekeeping. He deemed the tow necessary because neither the defendant nor the passenger could safely operate the vehicle; the expired rental agreement created some question whether the defendant had lawful authority to operate the vehicle; and leaving the vehicle unattended in the stop's location could have left it vulnerable to larceny, given the known prevalence of break-ins in the area.

When the defendant stepped out of the vehicle, Dodd observed him to be approximately six feet, five inches tall and 300 pounds. Dodd asked the defendant to step to the rear of the

vehicle for a patfrisk, which yielded nothing.  Dodd then informed the defendant that the officers would begin an inventory search of the vehicle.

By this time, Boston police Sergeant Paul Quinn had arrived on scene to assist.  Dodd observed in the passenger's open purse a glass pipe, which he knew to be used in the smoking of marijuana.  He also saw in the purse a box of sandwich bags of the kind used in street-level drug distribution.  Inside the box, officers found a thumbtack, which they knew to be used to break off pieces of "crack" cocaine; they also observed a white residue on the tack's metal point.

As Dodd and Quinn performed the search, Hunter stood with the defendant.  Through the silky material of the defendant's shirt, Hunter perceived several bumps protruding from the front shirt pocket.  When Hunter asked the defendant what they were, the defendant shoved Hunter and ran from the scene.  All three officers gave chase, shouting the command to stop.

Crossing Norfolk Avenue, the defendant approached a field. The officers observed him reach into his pocket and throw items on the ground before they were able to overtake him in the field.  As they attempted to handcuff the defendant, he ignored orders to comply, pushed Hunter away, and kept one hand underneath his body.  During this struggle, the defendant spat from his mouth a small, knotted plastic bag containing crack

cocaine.  Dodd struck the defendant's face while holding a flashlight, and the blow lacerated the defendant's nose and subdued him such that the officers were able to handcuff and arrest him.

Retracing their steps along the path of flight, officers later recovered keys to the defendant's vehicle and seventeen bags of crack cocaine.  These small bags were distinctively knotted like the one the defendant had spat from his mouth, and consistent with the packaging officers knew to be used in street-level sales.  A close-up photograph of the defendant at booking revealed glassy eyes and an intoxicated appearance consistent with Dodd's initial impression.

The motion judge denied the defendant's motion to suppress, concluding that the officers had reasonable suspicion for the traffic stop and probable cause to arrest the defendant for operating a motor vehicle while under the influence; the search of the vehicle was a lawful inventory search; it was properly conducted within the scope of the Boston police motor vehicle inventory search policy; and the bags of crack cocaine were properly seized as abandoned by the defendant.

The defendant challenges the denial of his motion to suppress, arguing that the evidence was obtained in violation of his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of

Rights. Specifically, he contends that the inventory search was pretextual and investigatory, and that any evidence subsequently seized is thus fruit of the poisonous tree.[10],[11] In reviewing a ruling on a motion to suppress, we accept the judge's findings of fact absent clear error, but review independently the judge's ultimate findings and conclusions of law. Commonwealth v. Campbell, 475 Mass. 611, 615 (2016).

Although a well-established exception to the warrant requirement, an inventory search must hew closely to written police procedures and may not conceal an investigatory motive. See South Dakota v. Opperman, 428 U.S. 364, 376 (1976); Commonwealth v. Rostad, 410 Mass. 618, 620 (1991). The lawfulness of an inventory search turns on the threshold propriety of the vehicle's impoundment, and the Commonwealth bears the burden of proving the constitutionality of both. See

---

[10] The defendant does not contest that police had reasonable suspicion for the initial traffic stop. "Erratic" driving that violates the civil motor vehicle code may give rise to a reasonable suspicion that a driver is impaired, permitting an investigatory stop. Commonwealth v. Daniel, 464 Mass. 746, 756 (2013). The motion judge explicitly credited the entirety of Officer Dodd's testimony, which included observations of the defendant's vehicle traveling on the wrong side of Norfolk Avenue. It was 2 A.M., and police reasonably suspected driver impairment. Id.

[11] The defendant also contends that the police lacked reasonable suspicion for the exit order and patfrisk. Because the patfrisk yielded no evidence, and because the determination to inventory the vehicle coincided with the exit order and preceded the patfrisk, we do not address this argument.

Commonwealth v. Eddington, 459 Mass. 102, 108 (2011);
Commonwealth v. Ellerbe, 430 Mass. 769, 772-774 (2000).

We have recognized three separate interests protected by warrantless inventory searches:  "the protection of the vehicle and its contents; the protection of the police and the tow company from false charges; and the protection of the public from the dangerous items which might be in the vehicle." Eddington, 459 Mass. at 108-109, quoting Commonwealth v. Garcia, 409 Mass. 675, 682 (1991).  Against this backdrop, "[t]he impoundment of a vehicle for noninvestigatory reasons is generally justified if supported by public safety concerns or by the danger of theft or vandalism to a vehicle left unattended." Eddington, supra at 108, quoting Commonwealth v. Brinson, 440 Mass. 609, 612 (2003).

Boston police department rule 103, § 31, provides for disposition of a vehicle in one of four ways:

"1.  leave it with a person having apparent authority to assume control of it; or

"2.  park it legally, close the windows, lock it, if possible, and attempt to notify the registered owner; or

"3.  leave it at the side of the road with windows closed and locked, if possible, if traffic is not obstructed and arrangements can be made for its removal without undue delay; or

"4.  have it towed for safekeeping."

The department's motor vehicle inventory search policy further

provides: "A vehicle will be disposed of in the manner authorized in paragraph 4, when there is a danger to public safety; a danger to the vehicle being left unattended; a danger of theft or vandalism; or the possibility of false claims exists. Therefore, an [i]nventory [s]earch will be performed."

Because officers had determined that neither the defendant nor the passenger could safely operate the vehicle, the first option was unavailable. Similarly, neither the second nor the third option was viable given the circumstances. See Eddington, 459 Mass. at 110 (impoundment and inventory search of vehicle parked on public street and vulnerable to larceny was reasonable, where defendant had been arrested and passenger was intoxicated). See also Ellerbe, 430 Mass. at 775-776 (same, where defendant arrested and passenger not in possession of driver's license). Contrast Commonwealth v. Oliveira, 474 Mass. 10, 15-16 (2016) (impoundment unreasonable where vehicle could safely be left in parking lot for owner's retrieval).

We entrust credibility determinations to the motion judge, Commonwealth v. Yesilciman, 406 Mass. 736, 743 (1990), and discern no error in her finding that the inventory search was not pretextual. Because the impoundment and attendant inventory search were reasonable in scope and complied with written policy, no basis exists for the defendant's argument that the

evidence later seized was fruit of the poisonous tree.[12]

b. <u>Motion for required finding of not guilty on assault</u>
<u>and battery charge</u>.  The evidence at trial was substantially the
same as at the evidentiary hearing on the motion to suppress,
augmented by the testimony of Officer Hunter and Sergeant Quinn,
Boston police Officer Robert England, the defendant, and the
defendant's father.[13]  The defendant argues that his motion for a
required finding of not guilty on the charge of assault and
battery on a police officer should have been allowed.  In
reviewing the denial of a motion for a required finding of not
guilty, we view the evidence in the light most favorable to the
Commonwealth.  <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 676-677
(1979).  The defendant asks instead that we credit his testimony
on self-defense.  Because this view improperly casts the

---

[12] Where we conclude that the judge correctly denied the
motion to suppress, we need not address the Commonwealth's
challenge to the stay of the sentence, which was based on the
sentencing judge's evaluation of the likelihood that the
defendant would prevail on appeal regarding the motion to
suppress.  We note, however, that the judge erred in evaluating
the likelihood of success of the appeal regarding the denial of
the motion to suppress by relying on the evidence presented at
trial, rather than the evidence presented at the motion to
suppress hearing.  See <u>Commonwealth</u> v. <u>Grandison</u>, 433 Mass. 135,
137 (2001) (when reviewing motion to suppress after trial, judge
is limited to considering testimony at hearing on motion to
suppress).

[13] England did not investigate the defendant's case, instead
testifying as a drug expert that eighteen individually packaged
bags of crack cocaine were unlikely to have been for personal
use.

evidence in the light most favorable to the defendant, we decline to adopt it. Hrycenko v. Commonwealth, 459 Mass. 503, 510-511 (2011). Viewed in the light most favorable to the Commonwealth, Officer Hunter's testimony that the defendant pushed him after he asked about the bumps in the defendant's shirt pocket was sufficient to support the conviction of assault and battery on a police officer. See Commonwealth v. Deane, 458 Mass. 43, 52 (2010) (motion for required finding properly denied where sufficient evidence supported jury's rejection of defendant's version of events).

c. Self-defense instruction. Finally, the defendant argues that his conviction of assault and battery on a police officer must be reversed because the jury instructions on self-defense impermissibly shifted the burden of proof to him. Where the defendant raised no objection below, we review for a substantial risk of a miscarriage of justice. Commonwealth v. King, 460 Mass. 80, 85 (2011).

Here, the judge instructed to the effect that, if the jury believed the defendant's testimony that police pushed him first, the Commonwealth bore the burden of proving the absence of self-defense beyond a reasonable doubt.[14] She did not define

---

[14] Specifically, the judge instructed as follows:

"Ladies and gentlemen, there's one additional point I want to make on the charge of assault and battery on a

reasonable self-defense, and the parties agree that her instructions were thus incomplete.

"Where there is an erroneous jury instruction we review the entire charge to the jury to determine the interpretation a reasonable jury would place on the judge's words."  King, 460 Mass. at 85.  The instruction here, although erroneously incomplete, did not prejudice the defendant by impermissibly shifting the Commonwealth's burden to him.  Instead, the judge's prefatory language offered context for the instructions that proceeded twice to state the correct burden of proof.  Contrast Commonwealth v. Mejia, 407 Mass. 493, 494-496 (1990) (instruction that defendant had to show he had been assaulted as

---

police officer.  I've told you that the second element is that the defendant intended to touch and that the third element is that the touching was either likely to cause bodily harm to Officer Hunter or was done without his consent.

"You have heard some testimony that the touching by [the defendant] came after Officer Hunter pushed him.  If you believe that testimony, you may consider whether or not [the defendant] acted in reasonable self-defense.

"So, if you find that the first pushing was done by Officer Hunter and that [the defendant's] response was reasonable self-defense, it is up to the Commonwealth to prove the absence of reasonable self-defense beyond a reasonable doubt.

"So, if you believe that Officer Hunter pushed first, and any response by the defense was reasonable, the Commonwealth is obligated to prove beyond a reasonable doubt the absence of reasonable self-defense on the part of [the defendant]."

"precondition to assert[ing] the defense of self-defense" was prejudicial error); Commonwealth v. Harrington, 379 Mass. 446, 454-455 (1980) (instruction that "[s]elf-defense is available to a defendant only under [certain] circumstances" and is never "available" to aggressor was prejudicial error).  Here, the jury would have considered reasonable self-defense only if they first believed the defendant's version of events ("If you believe that testimony, you may consider whether or not [the defendant] acted in reasonable self-defense"), which they were free to discredit. This instruction created no substantial risk of a miscarriage of justice.

3.  Conclusion.  For the foregoing reasons, the denials of the motion to suppress and motion for a required finding of not guilty are affirmed.  The defendant's convictions are also affirmed, but we remand to the Superior Court for resentencing on the counts of possession of cocaine with intent to distribute, pursuant to G. L. c. 94C, § 32A (c) and (d).

So ordered.